# BALTIMORE AND OHIO R. R. CO.

## *vs.*

## BARTHOLOMEW KANE and MARY KANE, his wife.

## MAYOR, ETC., OF BALTIMORE *vs.* SAME.

*Streets and highways: change of grade; liability; of munici-palities; —of other corporations.*

The owner of property abutting on a public highway holds it subject to the right of the government agencies to make such changes in the grade of the highways as the public convenience may require.                                   p. 238

Where a street is regraded by a municipality, and the work is skillfully done, without trenching upon the abutting prop-erty, or affecting the owner's easements of light and air, the municipality is not liable in consequential damages, even though the means of ingress and egress to the property are affected by the change of grade.                              p. 239

And the fact that a Railroad Company was benefited by the improvement, does not affect the question.          p. 239

But where a railroad, for its own convenience, changes the grade of a street, it is liable to the owner of abutting land, for the consequential injury, caused by the change, even though the same was authorized by the city; and in such a case the railroad

can not avail itself of the immunity which the law allows municipal corporations.                                    pp. 239-240

Where a railroad constructed a concrete embankment on the bed of a street to carry the street traffic over the railway tracks on the bed of a cross street, and in so doing, obstructed the use of an alley, by which access was had to the rear of certain property, *held* that for such obstruction the railway was liable, even though the work was by the City's consent.        p. 242

*Decided November 11th, 1914.*

Two appeals in one record from the Baltimore City Court. (Soper, C. J.)

The facts are stated in the opinion of the Court.

The causes were argued together before Boyd, C. J., Briscoe, Burke, Thomas, Pattison, Urner and Constable, JJ.

*Duncan K. Brent, W. Irvine Cross* (who filed a brief for the B. & O. R. R. Co.) and *Benjamin H. McKindless, Assistant City Solicitor* (with whom were *S. S. Field, City Solicitor,* and *Edw. J. Colgan, Jr., Asst. City Solicitor,* on the brief for the Mayor, Etc., of Baltimore), for the appellants.

*Edward L. Ward* and *Edw. M. Hammond,* for the appellees.

Burke, J., delivered the opinion of the Court.

The appellees on this record are the owners of a fee simple lot with improvements thereon located on the west side of Eutaw street in Baltimore City. The lot has a frontage of

B. & O. R. R. CO. vs. KANE.          233

Md.]                    Opinion of the Court.

twenty-five feet on Eutaw street with a depth of about seventy-one feet to an alley three feet wide which runs north to Hamburg street. The plaintiffs have a right to the use of this alley in common with others. Access to the plaintiff's property in the rear was had through the alley from Hamburg street—the property of the plaintiffs being located ninety-one feet from the south side of Hamburg street at its intersection with the west side of Eutaw street. The plaintiffs' property was used for dwelling and saloon purposes—a saloon having been conducted there for some time prior to the infliction of the injuries complained of in this case. There were two steps—one to the saloon and one to the dwelling—leading from the front on Eutaw street into the property.

The Mayor and City Council lowered the grade of Eutaw street for a considerable distance, and in front of the plaintiffs' property the grade of the street was lowered at the north end about five feet two inches, and at the south end about four feet nine inches. The effect of this excavation was to increase the elevation of the entrance and to require the construction of eight additional steps in order to enter the saloon and residence.

The Baltimore and Ohio Railroad Company by permission of the Mayor and City Council, constructed concrete approaches on the south portion of Hamburg street to a bridge which it entered over Eutaw street. The approaches and bridge were built to carry the traffic over Eutaw street on which the railroad company had for many years operated its cars. The work of constructing the approaches and bridge was done solely by the railroad company and the entire cost of the work was paid by it.

The construction of the approaches to the bridge obstructed the three foot alley mentioned, in that the concrete approaches were built across the alley to a height of about six feet at the point of the intersection of the alley with Hamburg street. The plaintiffs' easements of light and air were not affected by the change of grade of Eutaw street, or by the construction of the bridge and its approaches, but the ingress and

234        B. & O. R. R. CO. vs. KANE.

Opinion of the Court.        [124

egress to the property were interfered with in the manner
stated.   The effect of the whole change was to require eight
additional steps to get into the property in the front, and
the construction of about the same number to get into the
house in the rear.

The plaintiffs sued the Baltimore and Ohio Railroad Com-
pany and the Mayor and City Council in the Baltimore City
Court to recover damages for the injuries done their prop-
erty by the change of the grade of Eutaw street and the
obstruction of the alley referred to.   They recovered a judg-
ment against both defendants and both defendants have
appealed.

The work done by the Baltimore and Ohio Railroad Com-
payn was done under the authority of Ordinance 387, ap-
proved August 16, 1909, known as "The Grade Crossing
Ordinance," and which was accepted by the Railroad Com-
pany.   This ordinance was considered by the Court in the
case of *Walters and wife* v. *The Mayor and City Council of
Baltimore* and *the Baltimore and Ohio Railroad Company,*
120 Md. 644.   In that case both defendants were held liable
upon the ground that there had been a taking of the plain-
tiffs' property for public use without compensation.   The
circumstances which led to the passage of Ordinance No.
387, and the reason and objects of the construction of the
bridge and its approaches were fully stated by JUDGE STOCK-
BRIDGE in the opinion in that case.   His discussion of the
history and provisions of the ordinance, and the purpose to
be subserved by the work authorized by it dispenses with a
full consideration of those matters in this opinion.   In view
of the statement of facts contained in that opinion only a
brief outline of the evidence in this case need be stated in
order to ascertain and apply the legal principles by which
the rights, duties, and responsibilities of the parties to this
case must be determined.

It cannot be, and, indeed, it is not denied that the city in
lowering the grade of Eutaw street pursued the method pre-
scribed by law, and it must be admitted that in making the

B. & O. R. R. CO. vs. KANE.                235

Md.]                    Opinion of the Court.

excavations on Eutaw street in front of the plaintiffs' lot it
confined the work within the lines of the street.   As stated
above the plaintiffs' easements of light and air were not
interfered with, and there was no actual physical invasion of
their property.   The work was done by the city through a
contractor employed by it for that purpose and was paid for
by it.   The Baltimore and Ohio Railroad Company had
nothing to do with the actual work, nor was it under any
obligation to pay for it.   The work was not done under the
ordinance, but the city followed the usual methods used in
lowering the grades of streets.   The reasons which induced
the city to lower the grade are given in the evidence of Mr.
Benjamin F. Fendall, one of the plaintiffs' witnesses, who
was at the time the work was done City Engineer of Balti-
more City, and was in charge of the work in his official
capacity.   We quote from his testimony which is undis-
puted: "The Hamburg Street bridge was started in August,
1910, and finished in August, 1911; that the west approach
begins at about Warren and Hamburg streets and ends at the
west side of Eutaw street, where the bridge proper, that is,
the steel structure rests on piers and columns, begins to cross
the Baltimore and Ohio Railroad tracks, to the east side of
Hamburg street and then the east approach started down to
Sharp street; that the bridge proper extends across from
Eutaw to Howard street and is in the bed of Hamburg street
across the tracks of the Baltimore and Ohio Railroad; that
the bridge and approaches were actually constructed by the
Baltimore and Ohio Railroad; that the location for the ap-
proaches was furnished by the City of Baltimore; that before
the grade at Eutaw street was changed the clearance at the
bridge was about ten feet or eleven feet; that the cutting
down of the grade at Eutaw street was done by the City of
Baltimore and paid for it under contract with the McLean
Contracting Company and this grading was done some time
in 1911 about the time the bridge was completed.   Q. Can
you tell us the reason of the city for lowering the grade of

Eutaw street from Henrietta down to Stockholm, for in-
stance? A. You could not get under there with a high
wagon, and 'still less could you get under there with an
engine or train or box car; that there was not enough clear-
ance under the bridge, that a big wagon required more than
ten feet, and a railroad train or locomotive requires more
than ten feet; that an engine is about eighteen feet; and
then some wagons could not get under ten feet; that for-
wagon and road bridges the lowest clearance is generally
twelve feet but that is rather a tight squeeze with a big
load of hay; that the standard clearance for a railroad bridge
is twenty-two or twenty-three feet, sufficient to clear with a
man standing on a box car; that he is not familiar with the
new engines which are in use today, but that the old engines
which were used on the B. & O. fourteen or fifteen years
ago could get under seventeen feet six inches clearance; that
he thinks the clearance under the bridge at Eutaw street
after the grade was lowered was seventeen or eighteen feet as
compared with ten feet before the grade was lowered, but
there is more clearance on the east side than on the west side,
as the grade of the bridge itself goes up slightly after it
leaves the abutments, therefore, the bed of Eutaw street be-
ing level there would be more clearance on the east side than
on the west * * *. The ordinance fixed the height of the
bridge. It provided that the bridge should start at a cer-
tain place and rise with a specified grade until it got to a
certain other place. That of course fixed the height of the
bridge. That the physical work of lowering the grade at
Eutaw street was done by McLean Contracting Company,
who also built the concrete approaches and piers; that the
superstructure was built by a bridge company; that in his
capacity as City Engineer he visited the work once a week,
but, would also go down there whenever his assistants needed
him for any purpose; that he did this during the whole period
of construction of the bridge; that the lowering of the grade

of Eutaw street was completed about the time the bridge was finished; that to an extent they went along together."

The city and the engineers of the Railroad Company knew before the ordinance was passed that it would be necessary to lower the grade of Eutaw street in order to give sufficient clearance for trains.

No traffic could have gone under the bridge except pedestrians and horses drawing vehicles that were not more than ten feet high, and the city did not lower the grade any more than was absolutely necessary to allow engines and cars to go under the bridge.

In testifying as to the adoption of the plan for carrying the traffic over the railroad tracks, Mr. Fendall said: "We looked upon the matter as being one that the interest of the people of Baltimore generally was the first thing to be considered, but we also recognize that we would not be considering the interests of the people of Baltimore generally if we put the Baltimore and Ohio Railroad out of business. We had to consider both interests. But naturally we considered the interest of the people at large first as the most important. Q. You did not do anything for the interest of the railroad other than a citizen that would be affected, different from the consideration you gave other people down there who would be affected? A. No, sir. Q. You did not put them out of business, but you did not go out of your way to benefit them, that is correct, is it not? A. That is absolutely correct."

Upon the facts disclosed by the record there can be no doubt that the action of the city in lowering the grade of Eutaw street, and in consenting to the construction of the bridge and approaches was taken in the interest of the general public, and that the completion of both improvements subserved a great public interest and convenience, viz, the elimination of a dangerous crossing and the convenient and safe use for all kinds of traffic and trains on Eutaw street. There can, therefore, be no question as to the power of the City to do the things it did do, and having lowered the grade of Eutaw street in the interest of the public, and having done

the work in a lawful and skilfull manner, it cannot be held liable for the damages suffered by the plaintiffs, although the improvements did inure to the great benefit and advantage of the Baltimore and Ohio Railroad Company. This principle has been settled by a long line of decisions by this Court, and practically by the unanimous decisions of the Courts elsewhere:

"If the municipality simply grades or regrades its streets and does this skilfully without trenching on the property of the adjoining owner, it is under no obligation to pay consequential damages, because the individual holds his abutting and untaken property subject to the superior right of the government agencies to make such changes in the grade of the highways as the public convenience may require. *Baltimore City* v. *Cowen,* 88 Md. 447; *Cumberland* v. *Willison,* 50 Md. 138; *DeLauder* v. *Baltimore County,* 94 Md. 1.

The fact that the railroad company was greatly benefited by the improvements does not affect the application of the principle.

In the case of the *Mayor and City Council* v. *Brengle,* 116 Md. 342, in which an order of the lower Court quashing the proceedings of the Commissioners for Opening Streets on the ground that the closing of Morris alley was not for a public use, was reversed, the Court said: "It can not be said that, because some parties may receive more direct benefits than the public at large by closing this avenue, it is therefore for a private and not a public use. A street opened, graded and paved through a piece of land may enable the owner to sell lots for many times their former value, and it sometimes results in making a few persons wealthy; but it can not be said that because the opening of the street may have such an effect it is for a private and not a public use. It is perhaps rare for an application to be made to the county commissioners of a county to open, alter or close a road, excepting when one or more persons are specially interested in having it done. The case of *Jenkins* v. *Riggs,* 100 Md. 427, and *Riggs* v. *Winterode,* ibid, 439, are striking instances of special

benefits derived by an individual by the closing of an old road and the opening of new ones. The old road had not only reverted to Mr. Riggs, but was actually conveyed to him; but in the judgment of the county commissioners the public was benefited by the changes and Mr. Riggs was sustained by this Court in what was done."

In the *Walters case, supra,* the Court said that when one "suffers some additional inconvenience, as where there is a change of grade of the streets made by a municipal corporation, as a result of which he is more or less inconvenienced, he is still without remedy as against the municipal corporation, damage of this character being regarded as *damnum absque injuria.* *Pedicord's case,* 34 Md. 463; *Green* v. *City and Suburban Ry.,* 78 Md. 304.

"It is upon this familiar principle that the city claims exemption from liability in the present case, *and if there is nothing more than a change in the grade of Hamburg street the position is sound.*"

It results from what we have said that there can be no recovery against the city for damages resulting to the plaintiffs' property for either of the causes complained of, and that the first and second prayers of the city which asked that the case as to it be withdrawn from the jury should have been granted. Nor can the Baltimore and Ohio Railroad Company be held liable for the act of the city in grading Eutaw street. It had nothing to do with that work, and we know of no principle upon which it can be held liable upon a state of facts such as is disclosed by this record.

With respect to the obstruction of the three-foot alley the rights and liability of the railroad company must be determined upon entirely different principles. It obstructed the alley; the city merely gave its consent to the construction of the approaches, and while the improvement was to the mutual benefit of the public and the railroad company, that company voluntarily engaged to do the work for its own interest. Some other method more expensive and less desirable to the railroad company might have been adopted for the elim-

240 · B. & O. R. R. CO. vs. KANE.

Opinion of the Court. [124

ination of this dangerous grade crossing and enforced by public authority, but as the company voluntarily accepted, for its own benefit and advantage, the provisions of the ordinance and actually constructed the work at its own expense in accordance with its terms, it can not avail itself of the immunity which the law grants to the city, and therefore escape liability for the injuries to abutting owners.

Such a holding would be, we think, an unwarranted extension of the doctrine which protects the municipality, and, except for the conditional guarantee and protection contained in section 18 of the Ordinance and in the Act of 1910, Chapter 621, p. 621, the abutting owners whose property was not taken within the meaning of the constitution, would be without remedy. The situation is a most unusual one, and we have been unable to find a case presenting precisely similar facts. There is none in this State. In *Baltimore and Potomac Railroad Company* v. *Reaney*, 42 Md. 117; *O'Brien* v. *Baltimore Belt Railroad*, 74 Md. 363; *Garrett* v. *Lake Roland Railroad Company*, 79 Md. 282, and other cases, the companies were declared to be responsible for consequential injuries to property of abutting owners, although the work done was authorized by lawful authority. But it was done for the exclusive benefit of the railroad companies. In this case, however, the public interest as well as that of the railroad was subserved. The railroad was not the agent of the city, and, so far as it was concerned, it was exercising the powers granted by the ordinance for its own private purposes. To the contention of the railroad company that the plaintiffs' case is one of *damnum absque injuria*, the language of Mr. JUSTICE MORRIS in *Dana* v. *Rock Creek Railway Company*, 20 Washington Law Reporter, 24, may be justly applied: "From the conceded facts in the case it is clear beyond all possibility of doubt that this conclusion is not just, and if it is not just we cannot think that it is law. If it is to be held as law, it must be, not because it is the dictate of reason—for it is not—but in consequence of such

weight of authority as must be absolutely binding upon us and constituting a rule of construction for our guidance. We do not find any such weight of authority, or any sufficient authority to justify the conclusion which we are asked to adopt."

In *Burrit* v. *City of New Haven and New Haven and North Hampton Company,* 42 Conn. 174, it appears that the common council authorized the road commissioners of the city to make a contract with the railroad company that if the company would build a bridge over a railroad crossing the city would construct the necessary embankments for approaching it. Under this agreement the railroad company built the bridge and the city made the embankments. These embankments raised the street so much in front of a house and lot of the plaintiff as to damage the property seriously. It was held that the city was not liable for the damage, but that the railroad company was liable. The Court in considering the contention of the railroad that the principles announced in *Bradley* v. *New Haven and New Haven Railroad Company,* 21 Conn. 310, did not apply, because the bridge was found to have been required by the public convenience and necessity only, while in that case it was for the sole benefit and accommodation of the railroad company, said: "We do not see that this distinction affects the obligation of the company in this particular. If public convenience and necessity, by the growth of the city and the resulting increase of travel, require the change in order to restore the street to its former usefulness, the duty of the company under its charter, which was before inchoate, is complete, and the same responsibility adheres to it as if the work was demanded for its corporate benefit alone." The Court further said, that "the privilege of crossing the streets of the city is a part of the franchise of the company, and the necessary approaches constructed for the purpose of restoring city streets to their former usefulness under and as a condition to the exercise of the privilege, are a part of the railroad structure authorized by its charter, and in their

erection a party incidentally injured has as perfect a remedy against the company for consequential damages, as for a direct injury by it in the original construction of its railroad.   The obligation to make compensation is as strong in one case as in the other, and to the discharge of that obligation in the manner prescribed it impliedly bound itself by its acceptance of its charter."

It is also apparent from the views we have expressed that there was no error in the ruling embraced in the first exception, and that the other exceptions are not material and need not be discussed.   Inasmuch as we hold that the railroad company is liable for such damages as may be caused to the property by the interference with the alley, it follows that the first and second prayers of the railroad company, which asked that the case, as to it, be withdrawn from the jury were properly refused.   Its third prayer which limited recovery to such damages as the jury might find resulted from the closing of the alley should have been granted.   The conclusions we have reached upon the main questions in the case render unnecessary the consideration of the fourth prayer of the Baltimore and Ohio Railroad Company which sought to restrict the recovery for closing the alley to nominal damages.

For the reasons stated the judgment must be reversed and a new trial awarded.

*Judgment reversed and new trial awarded*
*appellees to pay the costs.*