## THE MAYOR AND CITY COUNCIL OF BALTIMORE AND THE BALTIMORE AND OHIO RAIL- ROAD COMPANY

*vs.*

## OTTO BREGENZER.

*Constitution, Article 3, section 40:* taking private property for *public use; compensation; kind of "taking" prohibited; mere inconvenience, or mere diminution of light* and air not sufficient.

The taking of private property for public use, without first making or tendering the just compensation therefor, as provided in sec. 40 of Art. 3 of the Constitution, may be prevented by injunction.                                        p. 82

The constitutional right to compensation for private property so taken, does not extend to cases where the land is not actually taken, but is only indirectly injured.                    p. 85

Mere *inconvenience* of access to property resulting from acts done, or the mere *diminution* of its light and air, does not con- stitute a taking of the property within the meaning of that pro- vision. For such injury to come within this provision, it must be such as to amount to their substantial destruction.      p. 87

Acts done in the proper exercise of *governmental powers,* and not directly encroaching upon private property, do not consti- tute a taking of property within that constitutional inhibition, even though the consequences of those acts may impair the use of the property.                                    p. 85

Under the discretion and authority of a municipal ordinance, a railroad company, in order to form an approach to a bridge over another street, changed the level and the grade of the street and sidewalk in front of certain houses of the complainant. The effect was to cut off the cellar windows of the house and thereby

to reduce somewhat the amount of light and air, and also, in varying degrees, to change the relative heights of the doors of the houses from the pavement, but not so as to cut off the access to the street; but during the building of the structure the access and egress of the property was much impeded: *Held* that this did not present such a "taking" as to warrant the issuing of an injunction.                                                          p. 87

For any damages or impairment of values to the property thus arising, an action at law would lie.                          p. 87

*Decided January 14th, 1915.*

Appeal from the Circuit Court No. 2 of Baltimore City. (AMBLER, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, STOCKBRIDGE and CONSTABLE, JJ.

*Robert F. Leach, Jr., Assistant City Solicitor* (with whom was *S. S. Field, City Solicitor* on the brief), for the appellant.

*J. Cookman Boyd* and *Emil Budnitz,* for the appellee.

BURKE, J., delivered the opinion of the Court.

Otto Bregenzer, the appellee on this record, filed a bill of complaint in the Circuit Court No. 2 of Baltimore City in which he prayed that the Mayor and City Council of Baltimore and the Baltimore and Ohio Railroad Company be restrained from erecting in front, against, and upon his property the approach mentioned in the bill, to a bridge which it was proposed to erect over Eutaw street. Both defendants answered the bill, and testimony was taken in open Court under the Statute. Upon the facts in evidence the lower Court determined that "at least as to Nos. 424, 426, 428 and

430 West Cross street, the construction of the proposed via-
duct on Cross street according to the approved plans offered
in evidence, even as explained, or modified by the witness,
Ogier, would amount to a taking of the plaintiff's property,
under the decision of the Court of Appeals of Maryland in
the case of *Walters* v. *B. & O. R. R.,* 120 Md. 644," and
ordered that both defendants be enjoined "from constructing
said viaduct in front of the plaintiff's property on Cross
street mentioned in these proceedings according to the said
plans unless and until just compensation, as provided by the
laws of this State, shall have been fully paid or tendered to
the plaintiff."

The following statement embraces all the material and
essential facts in the record: The appellee is the owner of
seven leasehold lots of ground with improvements thereon
situate on the north side of Cross street between Warner and
Eutaw streets in Baltimore City, and known as Nos. 424,
426, 428, 430, 432, 434 and 436 West Cross street. Each
lot has a front on Cross street of twelve feet with an even
depth of sixty feet to a *three foot alley,* except No. 426 West
Cross street, which has a front of fifteen feet with a like
depth of sixty feet. The improvements consist of two-story
brick houses, in fair condition, with cellars about seven feet
high and fourteen feet long. Each house has two sunken
cellar windows, 24 inches high and 27 inches wide, except
house No. 436. This house has an areaway and one cellar
window.

The first floor of each house is elevated above the pave-
ment, and the entrance to each house is by means of steps
leading from the street—the number of steps varying from
four to six. The houses are rented to colored tenants. For
some of the houses the appellee receives seventeen dollars
per month each, and for others he receives three and three
dollars and a half per week.

Under the provisions of Ordinance No. 387, as amended
by Ordinance No. 320, approved July 16, 1913, the Mayor

and City Council of Baltimore, was about to change the grade of Cross street in front of the plaintiff's property, and the Baltimore and Ohio Railroad Company, under the terms of said ordinance, was about to begin the construction of a bridge over Eutaw street and also the construction of an approach to said bridge—the approach to be located in the bed of Cross street adjacent to the houses mentioned. The purpose of this work was to carry the traffic over Eutaw street and to eliminate the dangerous grade crossing on that street. The Baltimore and Ohio Railroad Company in its answer to the bill filed in this case said: "That unless prevented by the writ of injunction it intends to and in fact is compelled by the provisions of Ordinance No. 387 of the Mayor and City Council of Baltimore, approved August 16, 1909, a copy of which is filed herewith, marked 'Defendant's, the Baltimore and Ohio Railroad Company, Exhibit No. 1,' and within the time set out in said ordinance and in accordance with plans and specifications which have been approved by and are on file with the city engineer of Baltimore City, to change the grade of Cross street between Sharp and Warner streets, by means of the construction of a steel girder bridge over the present railroad tracks in Cross street, with the necessary stairways and approaches thereto, as will more particularly appear by reference to said ordinance and plans."

The approach will be of concrete construction, with a width of 25 feet for a drive way and 10 feet for a footway, and it is proposed to construct it on the building line in front of the plaintiff's property and in contact therewith. It is to be built upon what is practically a five per cent grade, and the effect of the construction upon the plaintiff's houses would be as follows, viz: *First,* it would necessitate the removal of the steps to which we have referred; *secondly,* it would completely obstruct the cellar windows and the areaway mentioned and shut off the light and air from the cellars of the houses; *thirdly,* the relation of the footway, adjacent to the property would be as to the respective houses as fol-

lows, viz: the surface of the footway in front of house No. 424 would be 20 inches above the first floor; in front of house No. 426 it would be 8 inches above the first floor level; in front of house No. 428, it would be one inch above the first floor level; in front of house No. 430, the first floor level would be 5½ inches above the surface of the approach; No. 432 would be 14 inches above; No. 434, 22 inches above, and No. 436, 30 inches above. It would therefore require a less number of steps to enter four of the houses after the construction than is now required. As to house No. 424 it would require two steps down from the proposed footway to reach the first floor, and one step down to reach the first floor at No. 426. The first floor of No. 428 would be practically level with the footway. During the construction of the approach very great inconvenience as to ingress and egress to and from the houses would be suffered by the occupants thereof. The approach would be built wholly within the limits of the street and there would be no actual or physical invasion or appropriation of any part of the plaintiff's lots.

Ordinance No. 387 was considered by this Court in the *Walters case, supra,* and in *Baltimore and Ohio Railroad Company* v. *Kane,* 124 Md. 231, and *Baltimore and Ohio Railroad Company* v. *Kahl,* 124 Md. 299. In the two latter cases the liability of the railroad company for damages to property of abutting owners resulting from the construction of a similar approach was established.

It is declared by Section 40, Article 3 of the Constitution that, "The General Assembly shall enact no law authorizing private property to be taken for public use, without just compensation, as agreed upon between the parties, or awarded by a jury, being first paid or tendered to the party entitled to such compensation." The jurisdiction of a Court of Equity to prevent by injunction the taking of private property for public use in disregard of that section of the organic law is well established in this State. *Western Md. R. R. Co.* v.

*Owings,* 15 Md. 199; *American Telephone Co.* v. *Pearce,* 71 Md. 535.

It is proper to say, in view of certain remarks of counsel at the hearing, that the Court does not understand that it announced a new legal principle in the *Walters case,* or that it impaired in the slightest degree the settled principles of law upon the subject it was dealing with. It merely applied these principles to the facts of that case.

The section of the Constitution quoted does not define property, nor does it declare what shall be a taking. It leaves those questions to the determination of the Courts upon the facts of each particular case. The general rule applicable to the subject was stated in *Garrett* v. *Lake Roland R. R. Co.,* 79 Md. 277. In that case the abutment of solid masonry in the bed of North street and the elevated structure of which Mr. Garrett complained were located nine feet and eight and one-half inches from the curb line of his property. No part of the street was included within the lines of his deed for the property located on that street and directly opposite the abutment. It was alleged that the construction of this abutment of solid masonry in the bed of North street and the elevated structure would, by reducing the width of the street in front of the plaintiff's lots to less than ten feet, *destroy the access to his property* from North street and prevent him from reaching the same with vehicles ordinarily used in Baltimore. It was further charged that the *destruction* of his right of access to his property would render it entirely unsalable, and deprive him of the market value thereof, and constitute in fact and in law a taking of his property without making compensation therefor, as required by the Constitution of the State. It was further alleged that this structure *deprived the premises of light and air,* and that, too, was alleged to be a taking of the property within the prohibition of the constitution.

In discussing the contention that the facts alleged would constitute a taking of the plaintiff's property for public use

in contravention of the constitution, JUDGE McSHERRY said: "Whilst the Constitution of the State has prohibited the taking of private property for a public use without compensation being first paid or tendered, it has not undertaken to define or declare what shall be a taking within its terms. True, there is some conflict among adjudged cases as to what amounts to such a taking, but the overwhelming weight of authority accords with the conclusions which this Court announced in two cases that will be fully referred to later on. Apart from the decisions of the Supreme Court of Ohio (*Crawford* v. *Village of Delaware,* 7 Ohio St. 460), which rest upon a doctrine peculiar to that State, and the recent New York decisions in the *Elevated Railway cases* (*Story* v. *New York Elevated R. R. Co.,* 90 N. Y. 122; *Lahr* v. *Metropolitan Elevated R. R. Co.,* 104 N. Y. 268), which are hopelessly in conflict with the principles announced in other cases in the same State (*Radcliff* v. *Brooklyn,* 4 N. Y. 195; *Fobes* v. *R. R. Co.,* 121 N. Y. 505), and the decisions in Minnesota (*Adams* v. *R. R. Co.,* 39 Minn. 286; *Lamm* v. *R. R. Co.,* 10 L. R. A. 268), and a few cases in Mississippi (*Theobold* v. *R. R. Co.,* 66 Miss. 279), and possibly one or two other States, all substantially following the New York Elevated Railway cases; there is practically an unbroken current of adjudged cases broadly and clearly marking and defining the difference between an incidental injury to, and an actual taking of, private property. An injury to, and a taking of, such property are distinct things. Every taking involves an injury of some kind, though every injury does not include a taking. 'Property is taken by an entry upon and appropriation of it, as in the ordinary case of location. It is injured by obstructing access, as in *Penn. R. R. Co.* v. *Duncan,* 111 Pa. St. 352, or drainage, as in *Penn. S. V. R. Co.* v. *Ziemer,* 124 Pa. St. 560.' *Jones* v. *R. R. Co.,* Pa. 25 Atl. Rep. 137. In *Transportation Company* v. *Chicago,* 99 U. S. 635, the Court said: 'Persons appointed or authorized by law to make or improve a highway are not responsible for consequential damages, if

they act within their jurisdiction, and with care and skill, is a doctrine almost universally accepted alike in England and in this country.' *British Cast-Plate Mfs.* v. *Meredith,* 4 Term, 794; *Sutton* v. *Clarke,* 6 Taunt. 29; *Boulton* v. *Crowther,* 2 Barn. & C. 703; *Green* v. *Borough of Reading,* 9 Watt. 382; *O'Connor* v. *Pittsburg,* 18 Pa. St. 187; *Callender* v. *Marsh,* 1 Pick. 418; *Smith* v. *Washington,* 20 How. 135. \* \* \* The decisions to which we have referred were made in view of Magna Charta and the restriction to be found in the Constitution of every State, that private property shall not be taken for public use without just compensation being made. But acts done in the proper exercise of governmental powers, and not directly encroaching upon private property, though their consequences may impair its use, are universally held not to be a taking within the meaning of the constitutional provision.' And this was affirmed in *Chicago* v. *Taylor,* 125 U. S. 161. The constitutional right to compensation for private property taken for public use does not extend to instances where the land is not actually taken, but only indirectly or consequentially injured." He then considered at length the case of *Willison* v. *Cumberland,* 50 Md. 148, and *O'Brien* v. *R. R. Co.,* 74 Md. 363.

In *DeLauder* v. *Baltimore County,* 94 Md. 1, it appeared that Mrs. DeLauder's right of way was *wholly destroyed* by the county in the construction of a culvert, embankment and guard rail on a county road. This easement of way was declared to be private property and its *total destruction* was held to be a taking within the meaning of the Constitution. It was said by JUDGE PEARCE, in delivering the opinion in that case, that, "It is well settled in this State that as against a municipal corporation in the careful exercise of its right and power to grade and improve public streets or roads, and where there is no taking or actual physical invasion of property, there can be no cause of action for an unavoidable injury done. It was so decided in *Balto. & Pot. R. R.* v. *Reaney,* 42 Md. 132, and in *Green* v. *City and Suburban*

*R. W.,* 78 Md. 304. The latter case was one of much hard-ship, but of clear law, for whilst by reason of the raising of the grade of the turnpike, Green was put to serious incon-venience and expense in changing the mode of ingress and egress to and from his premises, the means of ingress and egress was not destroyed. There was, therefore, no *taking* of any property right, and the damages suffered were conse-quential, and *damnum absque injuria.* So in *O'Brien* v. *Balto. Belt. R. R. Co.,* 74 Md. 375, where a cut was made in the bed of the street in front of the plaintiff's property, but the street, after the cut was made, remained forty-one feet wide. The most that O'Brien claimed was that he was deprived of the use of the street, *as it had before existed,* and that his property was thereby depreciated in value. The injury, therefore, whatever its extent, was held to be of an incidental or consequential nature, not entitling him to re-cover damages. In that case, JUDGE ALVEY, referring to the constitutional provision forbidding the enactment of any law authorizing private property to be taken for public use, with-out just compensation, observes that 'this provision does not profess to declare what rights shall be regarded as property, but the thing of which the party is deprived, must be private property, and it must be taken for a public use. Nor does the Constitution declare what shall constitute a taking within the meaning of the inhibition. These are questions of defi-nition left to be fixed by a just construction of the terms employed.' The injury inflicted upon Mrs. DeLauder is not the rendering the use of her right of way inconvenient or expensive, but it is the destruction of its use, and its de-struction is a *taking* in as just a sense as the appropriation of a gravel bank for the repair of a public road would be a taking."

In *Walters* v. *B. & O. R. R. Co., supra,* JUDGE STOCK-BRIDGE, after a clear and succinct statement of the facts, said, "that the effect of this structure was to *effectually bar all ingress to and egress from the premises,* unless by means

of a ladder from the second floor window to the newly constructed footway." This was tantamount to saying that the plaintiff's right of access to the property was in *effect destroyed.* In the judgment of the Court the facts brought the case within the principles announced in the DeLauder case, and that case was followed and its principles applied.

In none of the cases is it held that *mere* inconvenience of access resulting from acts done, or *mere* diminution of light and air constitute a taking of private property. The injury complained of must amount to a *substantial destruction* of these rights before the provisions of the Constitution can be invoked.

The facts of this case show that the construction of the proposed viaduct in its effect upon the property of the plaintiff would be widely different from the effect produced in the *Walters case.* We have stated all the essential facts in the earlier part of this opinion as strongly and as favorably to the plaintiff as they will warrant, and when considered in the light of the principles we have stated we are of opinion that the construction of the proposed approach will not be a violation of the section of the Constitution relied on,—the plaintiff's property will not be *taken.* Access to and egress from the property will not be destroyed. Light and air will not be wholly shut out. The property will undoubtedly be injured; but for all depreciation in its value,—for all losses of every description which the plaintiff may suffer as a direct result of the construction he may recover in an action at law, and being of opinion that the construction will not constitute a taking of the plaintiff's property, but that the apprehended injuries are in legal contemplation merely indirect and consequential, the decree appealed from must be reversed.

*Decree reversed and the bill dismissed, the appellee to pay the costs.*