# THE MAYOR AND CITY COUNCIL OF BALTIMORE

## ET AL.

.

### vs.

## CHARLES J. DOBLER.

*Equity Pleading—Averment of Conclusion—Information and Belief—Change of Street Grade—Damage to Abutting Property.*

In a bill for an injunction, an averment involving merely a conclusion based on information, the source of which is not disclosed, and without the giving of any facts or circumstances to enable the court to reach its own conclusions, is insufficient.

p. 641

An averment made entirely upon information and belief, without stating the source thereof, is insufficient. p. 641

That by reason of a change in the grade of a street, made by a municipal corporation under statutory authority, abutting property is rendered more difficult of access, without, however, the destruction of all means of ingress and egress, does not involve a taking of property within the meaning of the constitutional prohibition of the taking of private property for public use without compensation. pp. 643-645

A municipal corporation is not liable to an abutting property owner by reason of a change in the street grade which renders the property more difficult of access. pp. 643, 644

*Decided March 22nd, 1922.*

Appeal from the Circuit Court of Baltimore City (BOND, J.).

Bill by Charles J. Dobler against the Mayor and City Council of Baltimore, and August E. Christhilf, Highways Engineer. From an order granting a preliminary injunction, defendants appeal. Reversed.

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, PATTISON, URNER, STOCKBRIDGE, ADKINS, and OFFUTT, JJ.

*Allen A. Davis,* for the appellant.

*Eli Frank* and *John H. Skeen,* for the appellee.

ADKINS, J., delivered the opinion of the Court.

This is an appeal from an order of the Circuit Court of Baltimore City enjoining the Mayor and City Council of Baltimore, the Highways Engineer, and the American Sugar Refining Company, and each of them, their respective officers, employees, agents and servants, from changing the grade of Clement Street in said city during these proceedings, and until the further order of court.

This preliminary injunction was granted on the following amended bill of complaint of Charles J. Dobler, the appellee, filed August 9th, 1921:

"AMENDED BILL OF COMPLAINT.

*"In the Circuit Court of Baltimore City.*

*"Charles J. Dobler, Plaintiff,* vs. *Mayor and City Council of Baltimore, a Corporation; August E. Christhilf, Highways Engineer, and American Sugar Refining Company, Defendants.*

"Amended Bill of Complaint Filed Pursuant to the Order of this Court of August 2nd, 1921.

*"To the Honorable the Judge of said Court—*
"Your orator, complaining, says:
"First: That he is a resident and taxpayer of Baltimore City, and is the owner of the unimproved fee simple lot in Baltimore City, described as follows:
"Beginning for the same on the northeast side of Fort Avenue at the distance of 275 feet 6 inches south-

easterly from the corner formed by the intersection of the southeast side of Woodall Street (formerly Allen Street) and the northeast side of Fort Avenue, and at the southeast side of a house on the lot adjoining the land now being described on the northeast, said place of beginning being the division line between lots 8 and 9 on Plat of Confiscated British Property at Whetstone Point, and running thence southeasterly, binding on the northeast side of Fort Avenue, 315 feet 5 inches to the southernmost outline of the property of the grantor and to the northwest side of a house on the lot adjoining on the southeast; thence northeastearly at right angles to Fort Avenue 466 feet to Clement Street; thence northeasterly on Clement Street 315 feet 5 inches to the northeasternmost outline of lot No. 9, and thence southwesterly 466 feet to the beginning.

"That the said lot was conveyed to him by Sidney Turner Dyer et al., by deed dated April 1st, 1920, and recorded among the Land Records of Baltimore City in Liber S. C. L. No. 3563, folio 455, and is a large and valuable piece of property.

"A certified copy of the said deed is hereto attached, as part hereof, marked 'Plaintiff's Exhibit No. 1.'

"Second: That Clement Street is a public street of the Mayor and City Council, bounding your orator's said lot on the north, and runs parallel with Fort Avenue, and is the first street to the north thereof; that your orator's said lot has a frontage on Clement Street of three hundred and fifteen feet and five inches. That the present grade of Clement Street where it bounds your orator's lot was established on or about October 14th, 1909. Plat of plaintiff's said lot is hereto attached as part hereof, marked 'Plaintiff's Exhibit No. 2.'

"Third: That the defendant, August E. Christhilf, is the Highways Engineer of Baltimore City, and is charged, among other matters, with the duty of letting such contracts and performing such work as may be necessary in connection with the change of grade

of streets as established by the city surveyor. The defendant, the American Sugar Refining Company, has constructed a large and valuable plant near that part of Clement Street which will be affected by the proposed change of grade and is now engaged in carrying out an extensive scheme of improvements. Upon information and belief, plaintiff avers that the proposed change in the grade of Clement Street is a part of the said scheme of improvements being carried out by the defendant, the American Sugar Refining Company, and plaintiff avers further, that the proposed improvement is for the sole benefit and advantage of the said American Sugar Refining Company, and that it is not a public improvement, and that if carried out it will involve the use of public funds for a private purpose.

"Fourth: Your orator further avers, upon information and belief, that the said proposed regrading of Clement Street is to be made pursuant to an agreement between the defendants, the Mayor and City Council of Baltimore and the American Sugar Refining Company, having for its purpose the lowering of the grade of Clement Street in such a manner so that convenient approaches may be made into the plant of said defendant, the American Sugar Refining Company, from the so called Belt Railroad of the defendant, the Mayor and City Council of Baltimore, by means of railroad tracks to be laid in the bed of Clement Street, to the end that cars of the Western Maryland Railroad Company and the Pennsylvania Railroad Company may have access to said plant of the American Sugar Refining Company. That your orator is advised and alleges, upon information and belief, that after the bed of Clement Street had been lowered as aforesaid, it is the intention to lay railroad tracks in said bed of Clement Street, and that said understanding or agreement was entered into with utter disregard of the rights of your orator or of the irreparable damage that would thereby be done on the lot of your orator.

"Fifth: Your orator alleges that the effect of the proposed change of grade, if carried out, would be to lower the present grade of Clement Street by an average perpendicular distance of approximately twenty feet throughout that part of Clement Street which bounds your orator's said lot, leaving the whole of said lot an average height of twenty feet above the proposed bed of said street, and thus destroy your orator's rights of ingress to and egress from the said property; that your orator will thereby be deprived of the use of said property by the defendants; that in order to make his lot conform to the proposed new grade and to permit the development of said lot in an advantageous manner, your orator will be compelled to pay in the neighborhood of fifty thousand dollars ($50,-000.00), or a sum representing approximately the entire value of said lot as it now is or will be after the completion of the proposed regrading; that your orator will thus be deprived of his property without due process of law and without compensation having been paid, tendered or secured therefor as provided by the Constitution of the State of Maryland and the Constitution of the United States of America.

"Sixth: And your orator further alleges and avers that he will thus be deprived of his said property for a private and not for a public purpose, and that the defendant, the Mayor and City Council of Baltimore, has no right to take private property for a private purpose.

"Seventh: Your orator is advised and avers that the Mayor and City Council, in changing the grade of Clement Street as aforesaid, is proceeding under sections 41, 42, 43 and 47 of article 35 of the Baltimore City Code of 1906, and that said sections were repealed, re-enacted and changed by the provisions of chapter 32 of the Acts of the General Assembly of Maryland, 1912, and that the said defendant is not proceeding in accordance with the provisions of said chapter 32 of the acts of 1912, and that the proceed-

ings now being taken are therefore without warrant or justification in law, but are null and void.

"Eighth: That even though said sections 41, 42, 43 and 47 of article 35 of the Baltimore City Code, have not been repealed, as hereinbefore alleged, but are still in full force and effect, nevertheless your orator is advised and therefore alleges that the said sections are not appropriate and do not apply to the case of your orator as hereinbefore alleged. The acts about to be done will result in the destruction of ingress to and egress from your orator's property, and therefore amount to the taking thereof, and that the defendant, the Mayor and City Council of Baltimore, in undertaking to act as aforesaid under such sections, is acting without warrant of law and its said action is illegal and void.

"Ninth: Your orator further alleges that the defendants have arranged with contractors for the doing of the work involved in said regrading, and that machinery and tools are already on the location of the said work, and that said work is about to be begun, and your orator further alleges that this complete preparation has already for some time been made, although the City Surveyor of Baltimore established the proposed regrading only on the 27th day of July, 1921.

"Tenth: That irreparable loss and damage will be inflicted upon your orator by the proposed re-establishment and change of the grade of Clement Street, for which he has no adequate remedy at law, and he will be remediless in the premises unless this honorable court intervenes, and by its writ of injunction restrains the defendants from the unlawful re-establishment and change of the grade of Clement Street as proposed.

"Wherefore, your orator prays that this honorable court will issue its writ of injunction directed to the said defendants, the Mayor and City Council of Baltimore; August E. Christhilf, Highways Engineer, and the American Sugar Refining Company, enjoining them, and each of them, their respective officers, employees, agents and servants, from taking any steps

to go upon your orator's premises, and from taking
any action or proceedings whatever looking to the re-
establishing or changing the grade of Clement Street
as proposed, and that your orator may have such
other and further relief as he may be entitled to re-
ceive.

"And as in duty, etc.,

"Charles Lee Merriken,
"Frank, Emory & Beeuwkes,
"Solicitors for Plaintiff."

The Mayor and City Council of Baltimore, one of the de-
fendants, filed its answer on August 13th, 1921, and at once
entered an appeal from the order granting the preliminary
injunction. On such an appeal the answer cannot be con-
sidered, and it is therefore unnecessary to set it out.

The contention arising under paragraphs seven and eight
of the bill were abandoned by appellee in his brief and oral
argument. The remaining questions are:

First—Is the averment of the bill, that "the proposed im-
provement is for the sole benefit and advantage of the said
American Sugar Refining Company and that it is not a pub-
lic improvement and that if carried out, it will involve the
use of public funds for a private purpose," sufficient as a
basis for an injunction?

Second—Do the injuries which appellee alleges he would
suffer from the regrading as contemplated, amount to a tak-
ing of his property?

They will be considered in the order stated. The aver-
ment quoted in No. 1 follows immediately, and as a part of
the same sentence, the words "upon information and belief,
plaintiff avers that the proposed change in the grade of
Clement Street is a part of the said scheme of improvements
being carried out by the defendant, the American Sugar Re-
fining Company, and plaintiff avers further that." Taking
the entire sentence together it is difficult to impute to the
latter part or to the entire sentence the character of definite-

ness necessary in an application for injunction, or to escape the conviction that it is at best merely a conclusion of the plaintiff based on information the source of which is not disclosed. At any rate no facts or circumstances are given to enable the court to reach its own conclusion. The application therefore must fail so far as it depends upon that averment. *Miller's Equity,* sec. 581; *Adams* v. *Michael,* 38 Md. 123; *Johnson* v. *Lippert,* 96 Md. 584; *Johnston* v. *Glenn,* 40 Md. 200; *Tifel* v. *Jenkins,* 95 Md. 667; *Lamm* v. *Burrel,* 69 Md. 274; *Sprigg* v. *West. Un. Tel. Co.,* 46 Md. 74, 75.

It is unnecessary to refer to the averment in paragraph four of the amended bill further than to say that it is made entirely upon information and belief, without stating the source thereof, and is for that reason, if no other, insufficient.

The second proposition presents greater difficulties. In the fifth paragraph of the bill it is alleged that the effect of the proposed change in grade would be to lower the present grade of Clement Street by an average perpendicular distance of approximately twenty feet throughout that part of Clement Street which bounds plaintiff's lot, leaving the whole of said lot an average height of twenty feet above the proposed bed of said street, and thus destroy plaintiff's rights of ingress and egress; that plaintiff will thereby be deprived of the use of said property; that in order to make his lot conform to the proposed new grade and to permit the development of said lot in an advantageous manner, plaintiff will be compelled to pay in the neighborhood of $50,000, or a sum representing approximately the entire value of said lot as it now is or will be after the completion of the proposed regrading; that plaintiff will thus be deprived of his property without due process of law and without compensation having been paid, tendered or secured therefor, as provided by the Constitution of the State of Maryland and the Constitution of the United States of America.

It will be observed, however, from the first paragraph of the bill, that the greatest effect that can be given to the allega-

tion in the fifth paragraph is that plaintiff will be deprived of ingress from and egress to *Clement Street,* except at an expense which would amount to the entire value of the lot, because in the first paragraph of the bill it is shown that the lot on one side fronts on Fort Avenue 315 feet 5 inches, the frontage on that street being exactly the same in distance as on Clement Street. It will be observed further from said first paragraph that the lot in question is unimproved, and it does not appear that any plans have been made for dividing or developing it, or that it is susceptible, on the Clement Street end, to development for residential purposes. If any inference can be properly drawn from the environment as disclosed by the bill, it would seem to indicate that the natural development of the portion of the lot which fronts on Clement Street would be for factory purposes, whether that street remains as. at present or is regraded as proposed.

There are no *facts* alleged in the bill as distinguished from the *opinion* of the plaintiff, tending to show that, if found desirable, there could not be an advantageous development of the Clement Street end of the lot without the expense of lowering its grade to meet the proposed grade of that street. It is certainly conceivable that the difficulty could be overcome by basement and elevator construction. Besides we see nothing to prevent the approach to any buildings that might be constructed at that end by way of a cross street or streets leading from Fort Avenue. The above observations illustrate the difficulty we would find ourselves in on the allegations of *facts,* even if the case could be decided by the determination of the question whether or not the proposed regrading would destroy the value of the lot so far as its value depended upon its location on Clement Street.

But on all the facts alleged in the bill, this case must be decided apart from any consideration of the effect of the proposed regrading upon the value of the lot by reason of its location on said street, there being no physical taking of property alleged, and no destruction of plaintiff's easement in the

use of said street. The controlling facts in the case are as follows:

1.    There is no physical taking of any part of the lot.

2.    There is no destruction of plaintiff's easement in the use of the street.

3.    There are no improvements erected on the lot on Clement Street, the reasonable use and enjoyment of which would be *destroyed* by the proposed regarding.

4.    There is a wide front of the lot on another street, so that ingress to and egress from the lot does not depend upon convenient access to Clement Street.

In the case of *Mayor and City Council of Cumberland* v. *Willison,* 50 Md., at page 148, a leading case in Maryland, it was said: "* * * It has been decided by a great preponderance of authority that municipal corporations, acting under authority conferred by the Legislature to make and repair, or to grade, level and improve streets, if they exercise reasonable care and skill in the performance of the work resolved upon, are not answerable to the adjoining owner whose lands are not actually taken, for consequential damages to his premises, even though in grading and leveling the street a portion of the adjoining lot in consequence of the removal of its natural support falls into the highway, and the same immunity exists if the street be embanked or raised so as to cut off, or render difficult the access to the adjacent property, and this too, although the grade of the street had been before established and the adjoining property owner had erected buildings or made improvements with reference to such grade. Property *thus injured* is not in the constitutional sense *taken* for public use. This doctrine was long since announced, after the most careful consideration, by courts of the highest authority, and by judges of great eminence and learning. *Collender* v. *Marsh,* 1 Pick. 418; *Radcliff* v. *Brooklyn,* 4 Comst. 195; *O'Connor* v. *Pittsburg,* 18 Pa. St. 187. It was also approved by the Supreme Court in the leading cases of *Goszler* v. *Georgetown,* 6 Wheat. 595,

and *Smith* v. *Washington,* 20 How. 135. These authorities have been since followed and adopted by the decisions of almost every State of the Union where the question has arisen, and in fact to such an extent that even the citation of the cases has become burdensome and superfluous. It is true that the Supreme Court of Ohio, in a series of decisions, has adopted a different doctrine and extended the liability of municipal corporations in such cases beyond the limits assigned to it elsewhere. By these decisions such corporations are held liable for consequential injuries which result from the exercise of their lawful powers upon the ground that if an act, though legal and lawfully executed, be done for the good of all to the injury of one individual, the injury should in justice and good morals be shared by all. But this doctrine has not only been rejected by the authorities to which we have referred, but the court which announces it admits it to be in direct conflict with the decisions both in England and America. *Crawford* v. *Village of Delaware,* 7 Ohio St. 459. So far, therefore, as injury to the private owner consists in leaving his property above or below the grade of a street, so as to cut off or render difficult the access thereto, and so far as its value or its convenient and comfortable enjoyment may be impaired in consequence of such grading or change thereof from time to time, the law seems to be will settled."

The general principle announced in the above case has been followed and approved in this State in all the cases since, down to the present time, in which that question has been involved, and unquestionably the great weight of later decisions elsewhere sustains it. See *O'Brien* v. *Balto. Belt R. R. Co.,* 74 Md. 375; *Green* v. *City & Suburban R. R.,* 78 Md. 304; *B. & O. R. R. Co.* v. *Kane,* 124 Md. 231; *Baltimore* v. *Bregenzer,* 125 Md. 78; *B. & O. R. R.* v. *Kahl,* 124 Md. 299; *De Lauder* v. *Baltimore County,* 94 Md. 7; *Walters* v. *B. & O. R. R. Co.,* 120 Md. 644; *Sanderson* v. *Baltimore City,* 135 Md. 509.

But it is thought by appellee that the above mentioned doc-trine, which continued unimpaired in this State for so many years, was materially modified by the decisions in the three last mentioned cases.

In the *De Lauder Case, supra,* which was a suit for dam-ages for the destruction of the use of a private right of way, the County Commissioners of Baltimore County raised the bed of a public road, extending across the plaintiff's right of way, three or four feet, and along this embankment within the limits of the public road placed guard rails, which cov-ered the entire entrance to plaintiff's right of way, so that it could not be used even if graded up to the level of the em-bankment.    Judge Pearce, delivering the opinion of this Court, said:   "The injury inflicted upon Mrs. De Lauder is not the rendering the use of her right of way inconvenient or expensive, but it is the destruction of its use, and its destruc-tion is a taking in as just a sense as the appropriation of a gravel bank for the repair of a public road would be a tak-ing."   "If the guard rail had been omitted from the east side of the road, or if it had been so placed as to still permit in-gress or egress to and from the private road, the expense in-curred in grading the private road up to the increased heighth of the public road, would have been consequential damages."

In the present case there is no bar to access; it is simply a question of expense.

*Walters* v. *B. & O. R. R. Co., supra,* was an action at law to recover damages for injuries arising from structures erected in the bed of Hamburg Street immediately in front of, and within a few inches of, plaintiff's residence, and ex-tending upward so as "to effectually bar (as said by Judge Stockbridge in the opinion of this Court) all ingress to and egress from the premises, unless by means of a ladder from the second floor window to the newly constructed footway. The light and air were shut off from the first floor of the premises, thereby rendering that portion of the dwelling damp and uninhabitable."

The facts of that case clearly distinguish it from the case at bar, and it expressly recognizes the general principle.

*Sanderson* v. *Baltimore City, supra,* was a suit for damages for destroying plaintiff's right of ingress to and egress from her *home* by excavating the beds of the streets, *from which alone* she had access to her property, to a depth of from fifteen to thirty feet, leaving the property inaccessible to pedestrians except by a steep flight of steps, and absolutely inaccessible to vehicles of every description.

The above facts practically destroyed plaintiff's home and amounted to a *taking.*

There are no such facts in the present case. It is significant that JUDGE BURKE, who wrote the opinion in the *Sanderson Case,* said, in delivering the opinion of this Court in *Baltimore* v. *Bregenzer, supra:* "It is proper to say, in view of certain remarks of counsel at the hearing, that the court does not understand that it announced a new legal principle in the *Walters Case,* or that it impaired in the slightest degree the settled principles of law upon the subject it was dealing with. It merely applied these principles to the facts of that case."

We do not find anything in the alleged facts of the case before us to take it out of, or to require a modification of, the principle announced in the case of *Cumberland* v. *Willison,* and the long line of later cases referred to, or to entitle the appellee to a restraining order. We must therefore reverse the decree appealed from.

*Order reversed and bill dismissed, with costs to appellant.*