**FELDMAN** ET AL. *v*. STAR HOMES, INC. ET AL.

[No. 86, October Term, 1951.]

2

*Decided December 7, 1951.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS and HENDERSON, JJ.

*Eugene M. Feinblatt,* with whom were *Simon E. Sobeloff* and *Vernon H. Wiesand* on the brief, for the appellants.

*Moses J. Cohen, Assistant City Solicitor of Baltimore,* with whom was *Thomas N. Biddison, City Solicitor,* on the brief, for the Mayor and City Council of Baltimore and the Planning Commission of Baltimore City.

*Hilary W. Gans,* with whom was *A. Herman Siskind* on the brief, for Star Homes, Inc.

HENDERSON, J., delivered the opinion of the Court.

This appeal is from a decree of the Circuit Court of Baltimore City dismissing, after hearing, a bill for declaratory judgment filed by the appellants. The bill alleged that Star Homes, Incorporated, had applied for and obtained permits from the Buildings Inspection Engineer of Baltimore City for the erection of twenty two-story, semi-detached dwellings on a tract of land

4

located about two hundred and seventy-five feet north of Fords Lane, in the interior of the block formed by Clarks Lane on the north, Reisterstown Road on the west, and Park Heights Avenue on the east. Access to the development was to be through another tract about one hundred feet wide, owned by Star Homes, Incorporated, abutting on Fords Lane, and a projected road, to be known as Fieldcrest Road, thirty feet wide, leading into the development in a northerly direction from Fords Lane. Another road, to be known as Bancroft Road, was projected across the development in an east and west direction between the proposed dwellings, with a bend to the north at its eastern extremity. The bill alleged that the location of the proposed roads would seriously affect and irreparably damage the complainants' property and the character of the neighborhood.

The bill further alleged that the City Planning Commission, in violation of the provisions of Section 112 of the Baltimore City Charter, approved the subdivision plan attached to the application of Star Homes, Incorporated, including the street plans of Fieldcrest Road and Bancroft Road, without notice to the complainants and without a public hearing upon the application. The bill prayed that such approval be set aside, and the Planning Commission be required to give notice and conduct a hearing; that the permits be set aside and work under them be enjoined. The appellees, in their answers, denied that the appellants would suffer any damage by reason of the location of the proposed roads, denied that Section 112 of the City Charter was applicable to subdivision plans, and denied that the action of the Planning Commission and the Buildings Inspection Engineer, in approving the plans and issuing the permits, was illegal or void.

The complainants, Feldman and the Alpersteins, are taxpayers and the owners of 3702 Fords Lane and 3710 Fords Lane, respectively. Neither of these lots abut upon the proposed roads, but they do touch, in the rear, upon the tract where the proposed dwellings are to be

located.  After answers had been filed Dan Schloss, the owner of a tract of land adjoining the property of Star Homes, Incorporated, on the north, and Mrs. L. Edwin Goldman, the owner of property adjoining the property of Star Homes, Incorporated, on the west, were permitted to intervene as parties plaintiff.  Neither of the intervenors appealed from the decision of the Chancellor.

The Planning Commission is created by Section 102 of the Baltimore City Charter of 1949.  Power to adopt a Master Plan for the whole city, and Official Detailed Plans for particular areas, is conferred by Section 106. Section 112 provides that after preparation of a preliminary detailed plan for a given area, and "after a public hearing thereon, notice of the time and place of which hearing shall be given by posting notice in the neighborhood of the properties affected and by publication in a newspaper of general circulation in Baltimore City", the Commission may adopt an Official Detailed Plan.  Section 114 provides "The adoption of an Official Detailed Plan shall not, however, be deemed the opening or establishment of any street, or the taking of any land for public purposes, but solely as a designation of the location shown thereon for future acquisition for public use pursuant to the law in such cases made and provided."

Section 116 authorizes the Commission to regulate or supervise the development of subdivisions to insure their compliance with any applicable Official Detailed Plans.  Section 118 provides that no permits shall be issued for any subdivision plan, as defined in Section 117, until after approval by the Commission.  "In the event the Commission shall fail to approve or disapprove any such subdivision plan within thirty days from the date of submission thereof to the Commission, such plan shall be deemed to have been approved by the Commission * * *."  Section 119 provides:  "After the approval by the Commission of any such subdivision plan, the streets shown thereon shall have the status of a street shown on an Official Detailed Plan."  Section 120 provides

for an appeal from a decision of the Commission by an applicant or by the City.

In the instant case it is conceded that no Official Detailed Plan was adopted for the area in question and there are no applicable provisions of the Master Plan. It is clear, therefore, that Section 112 is not applicable, and we find nothing in the sections dealing with subdivision plans that requires notice or a public hearing. Indeed, under Section 118, it is provided that the mere failure of the Commission to act upon a plan submitted to it shall be equivalent to approval. Whether the lack of a requirement of notice and hearing is "in contravention of the spirit of sound planning", as contended, is not the concern of the courts. *Windsor Hills Improvement Association v. Baltimore,* 195 Md. 383, 389, 73 A. (2) 531, 533. We cannot supply words in the enactment that were apparently deliberately omitted. Nor can we find that the Commission acted illegally where it decided not to exercise its veto power. In the absence of enforceable restrictive covenants in the deeds, or restrictions duly imposed by the zoning authorities, it is still true that a property owner has the right to use his property as he sees fit, so long as the use does not constitute a nuisance.

The appellants contend, however, that they have a constitutional right to a hearing before a street layout is approved by the Commission. We may assume, without deciding, that one whose property rights are affected by an administrative decision may be entitled to be heard on the subject, and the denial of such right may constitute a lack of due process. *Lordship Park Association v. Stratford,* 137 Conn. 84, 75 A. 2d 379; *In re Cobb,* 128 Misc. 67, 217 N. Y. S. 593. But see *Prescott v. Pierce,* 130 Misc. 63, 223 N. Y. S. 609. In the instant case it does not appear that property rights of the appellants were affected by the Commission's approval If such approval gave the street layout the status of an Official Detailed Plan, this did not amount to a public taking or acceptance, but "solely as a designation of the location

shown thereon for future acquisition for public use."
We are not here concerned with the right of the applicant
to compel the City to acquire the streets, or lift the re-
striction, a question left open in *Clarks Lane Garden
Apartments v. Schloss*, 197 Md. 457, 460-461, 79 A. 2d
538, 539. The Commission's approval did not alter the
private character of the roads in question, nor did it bind
the City to take them over, by condemnation or otherwise,
in the future. See, however, Section 691 of the Charter,
cited in *Association of Independent Taxicab Operators v.
Yellow Cab*, 198 Md. 181, 191, 82 A. 2d 106, 111. Even
if the City should proceed to do so, adjacent property
owners would not be entitled to compensation for the
incidental damage due to the taking of their neighbors'
land. *Johnson v. Gas & Electric Company*, 187 Md.
454, 472, 50 A. 2d 918, 170 A. L. R. 709; *Krebs v. State
Roads Commission*, 160 Md. 584, 594, 154 A. 131; *Balti-
more v. Bregenzer*, 125 Md. 78, 87, 93 A. 425. Nor
would they have such a property interest as to entitle
them to intervene in such a proceeding, except perhaps
on the ground that the taking was for a private purpose
or otherwise unlawful. *Perellis v. Baltimore*, 190 Md.
86, 93, 57 A. 2d 341; *United States v. Certain Parcels
of Land in Denton, D. C.*, 30 F. S. 372, 375, and cases
cited.

In the instant case neither of the proposed streets
touch the appellants' lots at any point, nor would any
conceivable extension or continuation of such streets
cross their property. The only claim of damage to the
appellants is contained in a proffer, stipulated by counsel,
that if called as witnesses Feldman (and the Alpersteins)
would testify "that from the point of view of the neigh-
borhood, as well as from the point of view of his property
specifically, the approval of such a plan is bad planning
inasmuch as it creates near the interior of the block two
dead-end streets, and this would thus restrict the en-
trance of emergency equipment, and the turning around
of emergency equipment, and it would cause undue noise
because of trucks backing in and out of these streets, and

8

in addition the northernmost bend of Bancroft Road projects directly at his property and in the event there is a turning of the trucks or cars at night the lights of the turning vehicles would shine directly into the windows of his home."

We have frequently held that before a court of equity will grant injunctive relief at the instance of an individual, there must be a showing of special damage. *Cassell v. Baltimore*, 195 Md. 348, 353, 73 A. 2d 486, 488. Cf. *Green v. Garrett*, 192 Md. 52, 63 A. 2d 326, and *Weinberg v. Kracke*, 189 Md. 275, 55 A. 2d 797. The prayer for declaratory judgment adds nothing to the case, where the relief sought is not declaratory in its nature. *Bachman v. Lembach*, 192 Md. 35, 43. In the instant case the complaint, in substance; is that the proposed streets are not continued, so that vehicles entering the development will be compelled to turn around. This objection might be raised to any private road. Whether there would be less noise or light if through streets were established seems highly speculative. It is obvious that the establishment of twenty new dwellings in the interior of the block will necessarily affect the peace and quiet of the neighborhood, but the appellants do not suggest that the development is in violation of any zoning restrictions or otherwise unlawful. As was said in *Green v. Garrett*, *supra*, 192 Md. at page 64, 63 A. 2d at page 331: "It must be borne in mind * * * that living in a city entails the endurance of certain inconveniences and discomforts, and those who have established their residences there cannot expect to have the quiet and peace of the countryside. *Five Oaks Corp. v. Gathmann* [190 Md. 348, 355]." We agree with the chancellor that the appellants have not made out a case for relief.

*Decree affirmed, with costs.*