## JOHN P. DeLAUDER AND ALICE DeLAUDER vs. THE COUNTY COMMISSIONERS OF BALTIMORE COUNTY.

*Destruction of a Private Right of Way by a Change in Highway—Consequential Damage from Improvement of Road—Liability of County Commissioners.*

When a municipal corporation makes such a change in the condition of a public road as renders it impossible for a party to exercise his easement of way from the road over adjoining land, it is a taking of property within the constitutional inhibition.

The fact that a municipal corporation constructs a culvert, embankment and guard-rail on a public road with due care and skill, is no defense to an action for damages when such change in the roadway necessarily resulted in the destruction of plaintiffs' private right of way from said road over the adjoining land at the point where the change was made.

Plaintiff was entitled to a right of way from a public road over adjoining land beginning at a point where a drain crossed the road. The defendants in improving the road removed the drain and made a culvert and an embankment leading to it some feet above the adjoining ground and built guard-rails along the same so that the plaintiff could not use his right of way even if the adjacent land were graded up to the level of the road without removing the guard-rails. In an action to recover damages. *Held*,

1st. That plaintiffs' right of way was property and the destruction of it by defendants was a taking of property for which they are responsible, without regard to whether the work was done skillfully or not.

2nd. That if there had been no guard-rail, or if it had been so placed as to allow access to the easement of way, the embankment raising the road would only have caused consequential damage for which the plaintiff could not recover compensation, if the work had been done with due care.

Appeal from the Circuit Court for Harford County (WAT-TERS, J.)   The plaintiffs' fifth prayer, which was rejected, was that " if the jury shall find in favor of the plaintiffs under the instruction given, then they may allow such amount as they may believe will compensate the plaintiffs for the injury done them by and in consequence of the wrongful acts complained of and the loss thereby caused them from the time of the doing of such acts by the defendant to the time of the trial of this case, except such damages as the plaintiffs could have prevented by reasonable expense and trouble to avoid the same.   In considering whether the plaintiffs could have pre-vented any part of the loss and damage suffered by them in consequence of the acts complained of they are not to con-clude that the plaintiffs had the legal right to disturb any part of the bed of the public road, the culvert or the guard-rails placed within the limits of the public road, or to go upon the land of private owners outside the limits of the plaintiffs pri-vate road except at the risk of litigation."

The cause was argued before McSHERRY, C. J., FOWLER, BOYD, PEARCE and SCHMUCKER, JJ.

*John I. Yellott* and *S. A. Williams*, for the appellants.
The one distinct question clearly presented for review on this appeal is :   Can a municipal corporation make a needed improvement of its highway, which is beneficial to the public, without liability for damage to a contiguous or abutting prop-erty owner, unless such corporate body or its employees ex-ercise reasonable care to avoid injury to such individual prop-erty owner ?   This is the question distinctly made by the rejection of the plaintiffs' fourth prayer and the granting of the defendants' two prayers.   In other words, are the care and skill required to be shown to exempt from liability for consequential damage under the circumstances of this case, limited to the doing of the work and the good of the public, or, must there also appear to have been reasonable care to avoid damage to individual rights ?   Recent cases in our State

would seem decisive of this point: *Guest* v. *Church Hill*, 90
Md. 693; *O'Brien's case*, 74 Md. 373.

There was evidence to show that the location of the im-
provement, embankment and the guard-rails, were such as
*inevitably* to cause unnecessary damage, and that they could
have been so located and so constructed as to avoid this in-
jury, and be equally efficient for the public welfare. The jury
were entitled to consider this evidence. The prayers granted
for the defendant altogether excluded it, and made a success-
ful defense depend entirely upon the finding that the improve-
ments were reasonable and necessary, were useful and bene-
cial to the public, were constructed with ordinary care and
skill, were placed within the limits of the public highway and
were so maintained. As abstract propositions of law there is
little fault to be found with these instructions, and in many
cases they would have been proper, but in this case, in which
there was an admission that no regard was given the plaintiffs'
rights, and evidence that such care or regard would have
avoided the damage, the care and skill required are not prop-
erly defined, and hence the instructions are most misleading.

The location of the improvement was a material question in
the case. If that was careless and unskillful, as admitted to
be by the defendants' witnesses in the case so far as it affected
the plaintiffs, and was so located as to *inevitably* injure the
plaintiffs, the jury should have been required to pass on this
phase of the case. *County Comrs.* v. *Wise*, 71 Md. 52; *Field's
case*, 37 N. J. Eq. 600; *Town of Norwalk*, 37 Conn. 109.

*Frank I. Duncan* and *George L. Van Bibber*, for the appellee.

1. The facts set out in plaintiffs' declaration as constituting
their cause of action are essentially different from the facts
enumerated in the plaintiffs' second, third and fourth prayers
to be found by the jury as a condition precedent to the plain-
tiffs' right to recover.

2. As against the County Commissioners, which is a munic-
ipal corporation, upon whom is imposed by law the duty of
keeping the highways in good order and condition for the use

of the public, an abutting owner's easement of access is not such a property right that the destruction or impairment thereof by the defendant in the proper grading and improvement of the highway within the limits thereof, will constitute a taking of private property within the meaning of a constitutional prohibition against the *mere taking* of property. The distinction between consequential damages and an actual taking, have been elaborately discussed in several recent cases before this Court, with the result, that it no longer remains a question in this State where there has been no actual appropriation of or entry upon the land claimed to be damaged by structures placed in a highway by municipal authority, and where the consequences of such structures are not physical invasions of the soil of the abutting owner, nor an ouster of him therefrom ; that the damages resulting therefrom are consequential, and that there is no taking of private property for public use within the meaning of section 40 of Article 3 of the Constitution. *Garrett* v. *Lake Roland Co.*, 79 Md. 280.

3. If the plaintiffs' damages are consequential it is well-settled law in Maryland that the law imposes upon the County Commissioners the duty to keep the public highways in good order and condition, and when this duty is performed skillfully and honestly, and the improvements made are reasonable and necessary although a party may be injured thereby, it is *damnum absque injuria.* *Tyson* v. *County Commissioners*, 28 Md. 510; *Walter* v. *County Commissioners*, 35 Md. 394; *Garrett* v. *Lake Roland Co.*, 79 Md. 282; *Green* v. *Suburban R. Co.*, 78 Md. 304.

PEARCE, J., delivered the opinion of the Court.

Mrs. DeLauder, one of the appellants in this case, is the owner of a farm situated partly in Baltimore County and partly in Harford County, the two portions being separated by a stream called the Little Gunpowder Falls, and by a public road running through the Baltimore County part of the farm and parallel with the stream. Between this public road and the stream there is a narrow strip of land belonging to the

Cotton Duck Company, over which Mrs. DeLauder has a private right of way twenty or twenty-five feet in width, used by her for communication between the Baltimore County part and the Harford County part of said farm, and being the only means of communication possessed by her, and this action is brought to recover damages claimed for the alleged obstruction, or destruction, of this right of way.

It appears from the evidence that this right of way had been used by the owners of the plaintiffs' farm for more than fifty years; that at or about the point where it left the public road there was a drain crossing the road, covered with stone slabs, which carried off the water from a spring on the west side of the road to the east side, and thence to the falls, and which also carried off some of the surface water, but was not sufficient at all times to carry off all the surface water which came to the drain. In 1899, the County Commissioners of Baltimore County removed this drain, and in its place constructed a wooden culvert five feet wide and about two and a half feet high, and about three and a half feet above the top of the old drain. This culvert was located just about where the old drain had been, and the bed of the road was filled in for some distance on both sides of the culvert to make the grade of the approaches thereto easy, and the embankment thus raised was from three to four feet above the adjoining ground on the east side of the road, and extended across the plaintiffs' right of way. Along the sides of this embankment, and wholly, but just within the limits of the public road guard-rails were placed for the protection of the public, and the evidence was that the guard-rail on the east side of the road covers the entire entrance to the right of way, which could not be used, even if graded up to the level of the culvert, without removing the guard-rail, and that it is now impossible to get in or out of the right of way with a team. The testimony showed that the culvert improves the road and is beneficial to the public.

The declaration sets out the plaintiffs' right of way, the construction of the culvert by the defendants, and the conse-

quent destruction of the user of the right of way. The defendant pleaded that it was a municipal corporation, charged with the duty of keeping the public roads of the county in safe and good condition for travel, aud that it constructed the culvert in question upon one of these public roads ; that it was a useful and necessary improvement thereto, and was constructed with due care and skill and was maintained with like due care and skill, and that the culvert and its approaches are the obstructions to plaintiffs' right of way complained of. To this plea the plaintiffs demurred, and the demurrer being overruled, the plea was traversed, and the case went to trial, resulting in a verdict and judgment for defendants.

The plaintiffs offered five prayers, of which the first (which merely asserted that the plaintiffs upon the facts stated therein were entitled to the free use of the right of way) was granted, and all the others were rejected. The defendant offered three prayers, of which the first and second were granted, and the third was rejected.

The demurrer to defendants' plea raises the question whether the defendant, in the discharge of its duty to the public, can ". render impossible and wholly destroy the plaintiffs' user of the right of way," or, to state the proposition more generally, but not with less legal accuracy, whether it can *take the plaintiffs' property without making compensation therefor.* The same question substantially is also raised by plaintiffs' second and third prayers, as well as the further question whether the defendants had the right so to locate said culvert and guard-rails as *inevitably* to cause injury to the plaintiffs, although otherwise the work may have been done with due care and skill.

Property has been defined as " the dominion, or indefinite right of user and disposition which one may lawfully exercise over particular things or subjects." 19 *Amer. & Eng. Ency. of Law*, 284. It extends to easements and other incorporeal hereditaments, which, though without tangible or physical existence, may become the subject of private ownership. *Tripp* v. *Overocker*, 7 Colo. 74. Here the land over which the right of way was enjoyed was not the property of Mrs. DeLauder.

The right to use this land, within certain prescribed limits, was the only property right she had in the land, and it is this right of user which is alleged to have been taken by the defendants. The plea does not deny the averments of the declaration, but is admittedly a plea in confession and avoidance. It is well settled in this State that as against a municipal corporation in the careful exercise of its right and power to grade and improve public streets or roads, and where there is no taking or actual physical invasion of property, there can be no cause of action for an unavoidable injury done. It was so decided in *Balt. & Pot. R. R.* v. *Reaney*, 42 Md. 132, and in *Green* v. *City and Suburban R. W.*, 78 Md. 304. The latter case was one of much hardship, but of clear law, for whilst by reason of the raising of the grade of the turnpike, Green was put to serious inconvenience and expense in changing the mode of ingress and egress to and from his premises, the means of ingress and egress was not destroyed. There was, therefore, no *taking* of any property right, and the damages suffered were consequential, and *damnum absque injuria*. So in *O'Brien* v. *Balt. Belt R. R. Co.*, 74 Md. 375, where a cut was made in the bed of the street in front of the plaintiff's property, but the street, after the cut was made, remained forty-one feet wide. The most that O'Brien claimed was that he was deprived of the use of the street, *as it had before existed*, and that his property was thereby depreciated in value. The injury, therefore, whatever its extent, was held to be "of an incidental or consequential nature," not entitling him to recover damages. In that case, JUDGE ALVEY, referring to the constitutional provision forbidding the enactment of any law authorizing private property to be taken for public use, without just compensation, observes that "this provision does not profess to declare what rights shall be regarded as property, but the thing of which the party is deprived, must be private property, and it must be taken for a public use. Nor does the Constitution declare what shall constitute a taking within the meaning of the inhibition. These are questions of definition left to be fixed by a just construction of the terms

employed." The injury inflicted upon Mrs. DeLauder is not the rendering the use of her right of way inconvenient or expensive, but it is the destruction of its use, and its destruction is a *taking* in as just a sense as the appropriation of a gravel bank for the repair of a public road would be a taking.

In *Pumpelly* v. *Green Bay Co.*, 13 Wallace 166, where water was backed upon the plaintiffs land, it was held that it was not necessary that property should be absolutely taken in the narrowest sense of that word, to bring the case within the protection of this constitutional provision, and that there may be such serious interruption to the common and necessary use of property as will be equivalent to a taking within the meaning of the Constitution, and that case has been cited and relied on in *Willison's case*, 50 Md. 147, and in *Guest's case*, 90 Md. 693. In the light of these principles and authorities the demurrer to the defendants' plea was erroneously overruled, and the plaintiffs' second and third prayers were improperly rejected. But these prayers should have been granted for another reason, even if no question of taking were involved. The second asserts that the plaintiffs are entitled to recover if defendants so located and constructed the culvert, its approaches, and the guard-rails, as to inevitably close up the private roadway although the culvert was properly located, and constructed with ordinary skill and judgment. The third asserts substantially the same proposition, except that it omits any averment of inevitable injury, alleging only that the actual result of the act done was to cut off the ingress and egress to and from said private road, and thereby to destroy its usefulness. In *Balt. & Pot. R. R.* v. *Reaney, supra*, it was said, " if due care be exercised, and the injury is the natural or inevitable result or consequence of doing the act authorized to be done, then, the party doing the act and producing the injury must indemnify the sufferer. That there was no negligence or want of care in doing the work is no answer in a case like that."

In *County Commissioners* v. *Wise*, 71 Md. 52, the Court said : " Whilst it is important that the necessary powers of a

municipality, conferred upon it for the public welfare, should not be so construed as to subject the body corporate to liability in a civil action for an honest mistake of judgment made when acting in a *quasi* judicial character, it is no less incumbent on the Courts to lay down no rule which shall, when applied in practice, deprive the individuals of redress where his property has been damaged or invaded, or his person has been injured by the improper and negligent execution of these same discretionary powers.   *   *   *   A bridge, like a sewer, may be so *located* as inevitably to cause injury to another, no matter how skillfully put together.   *   *   *   The construction of a bridge at a place totally unsuited for it, because calculated to occasion an injury like that complained of, cannot be skillful in any sense of the term, and a municipal corporation has consequently no right to build its works in such a manner and at such a place as will inevitable cause injury to another.   If it be the result of the bridge or sewer being placed at such a locality as to produce the damage actually inflicted, it cannot be said that the construction was other than negligent and unskillful.   *   *   *   There can be no skillful construction upon an improper location, and if an injury be produced by a negligent location of a bridge, the person aggrieved, is not, and ought not to be, without remedy." We have reproduced these passages from the opinion in the *Wise case* because of the close analogy between it and this case, and because of the emphatic announcement of the legal principles involved, from the application of which we cannot hesitate to say that the plaintiffs' second and third prayers were improperly rejected.

Inasmuch as the defendants' first and second prayers were framed upon the same theory as their plea which was demurred to, and ignored both the inevitable injury resulting from the acts done, and the necessity for the exercise of care and skill in locating as well as in constructing the culvert and guard-rails, they were improperly granted.

The plaintiffs' fourth prayer, we think, was properly rejected, because, as we understand it, it only alleges consequential

damage, without asserting it to be either the inevitable result of the act done, or of any want of care and skill.

The plaintiffs' fifth prayer, we think, states the proper measure of damages, and is in other respects free from objection. If the guard-rail had been omitted from the east side of the road, or if it had been so placed as to still permit ingress or egress to and from the private road, the expense incurred in grading the private road up to the increased height of the public road, would have been consequential damage. Or if the guard-rail had been placed upon the right of way, the plaintiffs might lawfully have removed it, but they were certainly not bound to incur risk of litigation by removing any structure within the limits of the public road, or by appropriating a private way over the lands of the Cotton Duck Company, outside of the limits to which they are entitled. This prayer should have been granted therefore, as regulating the damages, the recovery of which would have been permitted, under the plaintiffs' second and third prayers.

> *Judgment reversed with costs to appellant above and below, and new trial awarded.*

(Decided November 21st, 1901.)