# MISSOURI N. SANDERSON

## vs.

# MAYOR AND CITY COUNCIL OF BALTIMORE.

*Dedication—Sales by Plat—Acceptance—Taking of Property—
Grading by City.*

An intention to dedicate land for streets will be presumed
when the owner of land makes a plat on which streets are laid
down, and then conveys the land in lots described as bounding
on the streets or by reference to their numbers on the plat, from
which it appears that they do in fact so bound.          p. 520

However complete a dedication may be as against the party
making it, the road or street dedicated does not become a pub-
lic thoroughfare over which the public authorities may exert
ownership or control, or which they can be compelled to keep
in repair, until they have seen fit to accept it.          p. 521

Acceptance by a city of the dedication of land for streets is
not lacking in effectiveness because delayed for seventeen years.
                                                            p. 522

That the city, in grading the streets on which plaintiff's
property abutted, excavated the beds of the streets to a depth
of from fifteen to thirty feet, leaving the property inaccessible
to pedestrians except by a steep flight of steps, and absolutely
inaccessible to vehicles of every description, involved a taking
of private property, for which plaintiff is entitled to just com-
pensation.                                                  p. 523

*Decided January 13th, 1920.*

Appeal from the Court of Common Pleas of Baltimore
City (STANTON, J.).

The prayers for instructions were as follows:
*Plaintiff's First Prayer*—If the jury find that the plat
offered in evidence was recorded in or about the year 1875
by the receivers named thereon and lots sold by reference

thereto, and that the object of the streets shown on said plat was tó enable the purchasers from said receivers and their successors in title to have access to the lots bounding on such streets, then if the jury further find that the plaintiff and her predecessors in title has owned lots bounding on High- land (or Mondawmin) avenue and Twelfth (or Dennison) street, two of the streets shown on said plat for more than 20 years prior to the grading complained of in this case, and that the beds of said streets in front of said lots remained grass-grown fields and were not used or maintained by the authorities of Baltimore County or (after the annexation) of Baltimore City until the grading complained of in this suit, and that the defendant the City of Baltimore without any legal proceedings for the condemnation and opening of said streets proceeded to enter upon and grade said Twelfth (or Dennison) street and said Highland (now Mondawmin) ave- nue to a grade very much below the level of the abutting land, and if the jury further find that such grade deprives the plaintiff of reasonable access from said streets to her abut- ting property, then the verdict of the jury should be for the plaintiff. (*Refused.*)

*Plaintiff's* 1½ *Prayer*—The Court instructs the jury that the recording of the plat of Highland Park by the receivers as mentioned in the evidence, and the sale of lots with refer- ence to said plat, if the jury shall find such sale, amounted to a dedication of the streets shown on said plat, including Highland avenue and Twelfth street in front of the plaintiff's property, provided, the grade established for such streets be such as to afford the abutting property owners reasonable access to such streets; and said facts did not authorize the city to accept said streets by the establishment and construc- tion of a grade which the jury may find to be destructive of such reasonable access. (*Refused.*)

*Plaintiff's Second Prayer*—If the jury find that the plain- tiff was the owner of the lots at the northeast corner of Mon- dawmin (or Highland) avenue and Dennison (or Twelfth)

street as shown on the plat of Highland Park which is in evidence, and that for more than twenty years prior to the grading complained of in this suit the plaintiff and her predecessors in title was in possession of said lots, and that neither the City of Baltimore nor Baltimore County ever maintained said streets as public streets and permitted the plaintiff so to use a private way in the bed of said Dennison street and to improve and adapt her abutting property to the existing grade of the land in the bed of said street, and that the interest of right and justice require that the city should not now be permitted to accept any dedication of said streets and so to grade them as to deprive the plaintiff of reasonable access from them to her abutting property without making just compensation, then the defendant at the time of the grading complained of in this suit was estopped to accept any dedication of said streets, and the verdict of the jury must be for the plaintiff.    (*Refused.*)

*Plaintiff's Third Prayer*—If the jury find that the plaintiff and her predecessors in title for more than twenty years prior to the grading complained of in this suit had held open, notorious and undisputed possession of parts of the beds of Highland (or Mondawmin) avenue and Twelfth (or Dennison) street adverse to that of all persons whatsoever, and used and cultivated the same freely without interruption as her and their own property, and if the jury further find that Baltimore County or Baltimore City prior to the grading complained of in this case never improved, lighted, sewered or maintained the same as streets, and that the city entered upon and tore down the surface of said parts of said streets, then the verdict of the jury must be for the plaintiff.    (*Refused.*)

*Plaintiff's Fourth Prayer (Alternative to Plaintiff's Prayers No. 1, 1½, 2 and 3)*—If the jury find that the plaintiff was in possession of the property at the northeast corner of Mondawmin (or Highland) avenue and Dennison (or Twelfth) street, and the city in grading Twelfth street and Highland avenue did not confine its operations within the

lines of the streets as laid down on the plat of Highland Park which is in evidence, but in spite of her protests entered upon abutting property belonging to the plaintiff and dug up the surface thereof, then the plaintiff is entitled to recover, even though the city may have had the right to grade the beds of said streets; and the case is the same as if the city had had from the beginning no right at all to enter upon even the beds of said streets. (*Refused.*)

*Plaintiff's Fifth Prayer* (*Alternative to 4th*)—If the jury find that the city in grading Twelfth (or Dennison) street and Highland (or Mondawmin) avenue did not confine its operations within the lines of said streets as laid down on the plat of Highland Park which is in evidence, but entered upon abutting property belonging to the plaintiff and dug up the surface of such abutting property, then the verdict of the jury should be for the plaintiff. (*Refused.*)

*Plaintiff's Sixth Prayer*—There is no evidence legally sufficient to prove such a dedication of Highland (or Mondawmin) avenue and Twelfth (or Dennison) street as the city at the time of the grading complained of in this case could accept by grading said streets in the manner shown by the evidence, and therefore if the jury find that the plaintiff is the owner of the property at the said northeast corner of said Highland avenue and Twelfth streets, and that the defendants did such grading, their verdict must be for the plaintiff. (*Refused.*)

*Plaintiff's Seventh Prayer*—If the jury find that the grading done by the city through Beasman in the bed of Mondawmin (or Highland) avenue between Eleventh (or Hilton) and Twelfth (or Dennison) streets was not for the purpose of conforming to the established grade of said Mondawmin avenue but for the purpose of obtaining earth to use in grading another street, then such grading of said Mondawmin avenue was unlawful, and the plaintiff is entitled to recover such damages as the jury may find she has sustained therefrom. (*Refused.*)

*Defendant's First Prayer*—The Court instructs the jury that no evidence has been offered in this case legally sufficient, under the pleadings, to entitle the plaintiff to recover and the verdict of the jury must, therefore, be for the defendant. (*Refused.*)

*Defendant's* 1½ *Prayer* A—The Court instructs the jury that it appears from the uncontradicted testimony in this case that Mondawmin avenue between Eleventh and Twelfth streets, for a width of 66 feet, and Twelfth street between Mondawmin and Piedmont avenues, for a width of 66 feet, were dedicated to the public for its use as public highways and streets prior to the acts of the defendant complained of in the plaintiff's declaration; and the Court further instructs the jury that there is no evidence in this case legally sufficient to show that the Mayor and City Council of Baltimore ever abandoned its right to accept the dedication of said avenue and street; and the Court further instructs the jury that it appears from the uncontradicted testimony in this case that said avenue and street have been legally accepted by the Mayor and City Council of Baltimore as and for public highways; and if the jury believe from the evidence that in making the excavations in the beds of Mondawmin avenue and Twelfth street, the defendant or its agents confined their operations within the limits of said avenue and street as delineated on the plat offered in evidence, then the verdict of the jury must be for the defendant, even though the jury may believe that as a consequence of such excavating portions of the plaintiff's land adjacent to the lines of the said avenue and street was deprived of its natural support and fell into the beds of said avenue and street; unless the jury believe from the evidence that the defendant or its agents in making said excavations extended their operations beyond the lines of said street and avenue as delineated on the plat offered in evidence and actually encroached upon and physically invaded the plaintiff's property, and even if the jury so find

then their verdict should be for nominal damages only. (*Granted.*)

*Defendant's Second Prayer*—The Court instructs the jury that no evidence has been offered in this case legally sufficient to entitle the plaintiff to recover under the first count of the declaration and the verdict of the jury must, therefore, be for the defendant under the first count of the declaration. (*Granted.*)

*Defendant's Third Prayer*—The Court instructs the jury that no evidence has been offered in this case legally sufficient to entitle the plaintiff to recover under the amended count of the declaration and the verdict of the jury must, therefore, be for the defendant under the amended count of the declaration. (*Refused.*)

The cause was argued before BOYD, C. J., BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and ADKINS, JJ.

*Raymond S. Williams* and *Arthur W. Machen, Jr.,* with whom was *Roger B. Williams* on the brief, for the appellant.

*Allen A. Davis, General Assistant to the City Solicitor,* with whom was *Roland R. Marchant, City Solicitor,* on the brief, for the appellee.

BURKE, J., delivered the opinion of the Court.

In 1875 the Circuit Court of Baltimore City, in a cause pending therein, entitled the *Citizens National Bank of Baltimore* v. *The Chesapeake Mutual Land and Building Association et al.,* passed a decree appointing Robert D. Morrison and others receivers of about one hundred and twenty-five acres of land in fee known as Highland Park now lying in that part of Baltimore City known as Walbrook. On the 23rd of March, 1875, the Court authorized and directed the receivers to sell this land in parcels or otherwise. The receivers caused an extensive plat of the property to be prepared upon which streets and avenues were drawn or projected and named, and this plat was filed in the cause.

The receivers proceeded to make sale of the lots shown on the plat. The sales made were reported to and finally ratified, by the Court. In some of the deeds to the purchasers the streets and avenues laid down on the plat were mentioned in the description, and in other instances references were made to the serial numbers of the lots. A number of these lots came into the possession and ownership of Summerfield Norwood, the uncle of the appellee on this record. Among the streets and avenues shown upon the plat were two called Highland avenue and Twelfth street. Highland avenue is now known as Mondawmin avenue and Twelfth street as Dennison street, but their original names will be used in this opinion.

After the death of Summerfield Norwood a proceeding was instituted in 1895 in the Circuit Court of Baltimore City by his heirs and devisees for the sale of all the land of which he died seized, and the Court in due course appointed George R. Willis, Edward C. Eichelberger and James Pollard, trustees to make the sales. They sold the property hereinafter described to Missouri N. Sanderson, the appellee in this case. The sale was reported to the Court and was finally ratified, and the purchase money paid. Thereupon the trustees conveyed to Mrs. Sanderson, the purchaser, the following described lots:

"All those nineteen lots of ground (being a part of the aforesaid real estate) and situated in Baltimore City, in the annexed portion thereof, and State of Maryland, and thus described: Beginning for the first eleven of said lots, viz: Lots Nos. 108 to 118, inclusive, at the intersection of the east side of Twelfth street with the north side of Highland avenue, and running thence easterly bounding on the north side of highland avenue three hundred and seventeen feet to the southwest corner of Lot No. 119; thence north bounding on Lot No. 119 as laid out on the sales plat of Highland Park hereinafter referred to, one hundred and fifty feet to the south side of an alley twenty feet wide; thence westerly bounding on the south side of

said twenty feet alley, with the use thereof in common, three hundred and seventeen feet to the east side of Twelfth street; and thence south bounding on the east side of Twelfth street one hundred and fifty feet to the north side of Highland avenue, the place of beginning. Being and comprising Lots 108 to 118, inclusive, as laid down and designated on the sales plat filed with the report of sales, filed in these proceedings in the above entitled cause, and being also so laid down and designated on the sales plat of Highland Park filed and recorded in the case of the Citizens National Bank of Baltimore vs. The Chesapeake Mutual Land and Building Association et al., in the Circuit Court of Baltimore City, in Liber J. R. B. No. 179, folio 239, etc. And beginning for the remaining eight of said lots of ground, viz: Lots Nos. 97 to 104, inclusive, on the south side of Chesapeake avenue at the distance of one hundred and seventeen feet easterly from the intersection of the south side of Chesapeake avenue with the east side of Twelfth street; and running thence easterly bounding on the south side of Chesapeake avenue two hundred feet to the northwest corner of Lot No. 105 as laid down and designated on said plat; thence south parallel with Twelfth street and bounding on Lot No. 105, as laid down and designated on said plat one hundred and fifty feet to the north side of an alley twenty feet wide; thence westerly bounding on the north side of said twenty feet alley, with the use thereof in common with others, two hundred feet to the southeast corner of Lot No. 96, as laid down on said sales plat, and thence north parallel with Twelfth street and bounding on the east side of said Lot No. 96 one hundred and fifty feet to the south side of Chesapeake avenue, the place of beginning. Being and comprising Lots 97 to 104, inclusive, as laid out and designated on the sales plat filed with trustees' report of sales filed in these proceedings in the above entitled cause, and being also so laid out and designated on the sales plat of Highland Park above referred to."

In 1906 Mrs. Sanderson built a comfortable and commodious dwelling house at the northeast corner of Highland avenue and Twelfth street on the land first described in the above mentioned deed. Before the dwelling could be erected it was necessary to obtain a permit from the Building Inspector of Baltimore City, and to have the grade of the streets established. These requirements were complied with. Application for the permit was made on the 19th of September, 1906, and at the top of the application was printed the following in red ink: "The builder or owner must have the street lines established by the city engineer before starting work. Should the building not conform with the street lines the owner will be required to remove any and all encroachment beyond the side lines." The permit was issued October 5, 1906.

In 1914 the city began the grading of Highland avenue, and in 1916 completed its work on this avenue, and afterwards graded Twelfth street, between Highland avenue and Piedmont avenue. This grading inflicted serious loss upon the plaintiff's property, and on August 9, 1918, she sued the Mayor and City Council of Baltimore to recover compensation for this injury. The first count, which is a lengthy one, contained the following allegations as to the effect of the grading upon the plaintiff's property:

"In August, 1917, the defendant, without any legal proceedings for the condemnation or opening of Twelfth street between Highland and Chesapeake avenues, or of Highland avenue between Twelfth and Eleventh streets, or of either of them, and without any right or color of right, save and except the supposed dedication of said Twelfth street and said Highland avenue by virtue of the recording of said plat by the receivers and the sale of lots of said Summerfield Norwood and others referring thereto, and without any prior acceptance of said supposed dedication by any competent municipal authority, proceeded to enter upon the bed of said Twelfth street, between Highland avenue and Chesapeake avenue, and upon the bed of

said Highland avenue, between Twelfth street and Eleventh street, and to tear up and destroy the surface thereof, and to cut down and grade the same to a grade very much, to wit, thirty feet, below the surface of the surrounding land, and in such grading and as a consequence thereof to cause portions of the abutting land to subside and fall into the street, and leaving the plaintiff's residence on a high and unsightly bluff or cliff, rendering her abutting land virtually inaccessible, and altogether inaccessible by carriages, horses or motor vehicles, and wholly destroying and rendering impossible the private road or way constructed and maintained by her as aforesaid through the bed of what would have been Twelfth street to Chesapeake avenue. The home on which the plaintiff has lavished her care and attention for twelve years, in which she has had a pardonable pride, and which she has come to love as the centre and symbol of her family ties, has been rendered unsightly and scarcely habitable. Said Highland avenue, now known as Mondawmin avenue, is an ugly canon or gully between two cliffs or precipices of earth and stones, thirty feet in height, and said Twelfth street, in front of the plaintiff's said land is in the same condition. Said streets as so wrongfully constructed by the Mayor and City Council of Baltimore afford no access to the land of plaintiff or of other persons abutting on said Highland avenue, between Twelfth and Eleventh streets, and on said Twelfth street, between Highland avenue and Chesapeake avenue, but are wholly destructive of any reasonable access to the said property. The plaintiff's dwelling house and residence constructed as aforesaid upon the level of the land as existing at the time of the recording of said plat cannot be reached by her except by a flight of steps which she has been obliged to construct so steep as to amount virtually to a ladder. The plaintiff is wholly without means of entering upon her said land with horse-drawn vehicles or motor vehicles, and is unable to bring supplies into her said residence except by said steep flight of steps.

> Said streets as so graded and constructed are wholly
> destructive of the objects and purposes of any dedica-
> tion as offered to be made by the recording of said
> plat as aforesaid, and that the said streets constitute
> no reasonable means of access to the abutting property,
> but are barriers to access to the abutting property."

The second or amended count is a count in trespass *quare
clausum fregit,* and is based upon the contention, which the
plaintiff offered evidence to support, that the city in grading
the streets did not confine its work within their proper limits.
The trial resulted in a verdict and judgment for the plaintiff
for five hundred dollars, although she offered evidence tend-
ing to prove that the damage to her property amounted to ten
thousand dollars. The appeal before us was taken by the
plaintiff from that judgment.

The uncontradicted evidence tends to support the allega-
tions of the *narr.* with respect to the destruction of the plain-
tiff's ingress and egress to and from her property. Howard
B. Tustin, a surveyor and civil engineer, testified that, "at
the intersection of the building line of Dennison street and
Mondawmin avenue the cut is 15.7 feet from the surface.
Going east on Mondawmin avenue at the next point I have
marked, the cut is 23.8 feet from the surface; and at the
east end of Mrs. Sanderson's frontage on Mondawmin ave-
nue, it is 30.2 feet; on Dennison street, beginning at the
northernmost outline of the property, the cut is 14.1 feet and
the next place I have made the measurement it is 17 feet."

Mrs. Sanderson testified that immediately after the cut
was made on Twelfth street she had to construct a ladder to
get into the property. That that was the only means of get-
ting in or out; that her husband was obliged to carry the
coal up in boxes; that before the grading was done there was
a stable on the property at the corner of an alley and Twelfth
street with access to the stable through the alley; that the
stable was undermined at one corner and had to be taken
down; that the alley is now inaccessible at either end,—at

one end the cut is 15 or 16 feet, and at the other perhaps 30 or 33 feet.

The legal effect of the deeds from the receivers worked a dedication of the avenue and streets laid down or projected upon the plat filed in the receivership case to which reference has been made. Indeed, we do not understand that this is seriously disputed, but it is contended that the nonuser of the public of the streets and avenues united with the adversary possession of Summerfield Norwood of Highland avenue and Twelfth street fronting his property extinguished the public easement *before* the streets were accepted by the city. It is true that there is found in the record evidence of such adverse possession by Norwood, but, assuming that the public use was thus extinguished before the city accepted the streets and that the city cannot now rely upon the dedication created by the acts and deeds of the receivers, it would seem to be quite certain that Highland avenue and Twelfth street were dedicated to public use by the deed of the trustees to Mrs. Sanderson above referred to. We have set out the descriptions of the lots conveyed by that deed, and it appears that the property conveyed is said to bind on Highland avenue and Twelfth street. That deed was executed on the 18th of September, 1897, and the plaintiff, after the grades had been established, erected her dwelling house on a portion of the land conveyed. She cannot now be heard to question the dedication or the right of the city to accept the streets, and thus convert the public easement into public streets or highways of the city. The questions involved have been settled by a long line of decisions in this Court. *White* v. *Flannigain,* 1 Md. 525; *Flersheim* v. *Baltimore,* 85 Md. 489; *Baltimore* v. *Broumel,* 86 Md. 153; *Baltimore* v. *Frick,* 82 Md. 77; *Richardson* v. *Davis,* 91 Md. 390; *McCormick* v. *Baltimore,* 45 Md. 512; *Canton Co.* v. *Baltimore,* 106 Md. 69.

In the last cited case JUDGE SCHMUCKER, speaking for the Court, announced the doctrine as follows: "It is now universally held that an intention to dedicate land lying in the

beds of streets to public use will be presumed where its owner makes a plat of the land on which the streets are laid down and then conveys it in lots described as bounding on the streets or by reference to their numbers on the plat from which it appears that they do in fact bound on the street. In such cases there is, in the absence of language showing that no dedication was intended, an implied covenant that the purchaser shall have the use of the streets on which his lots bound, from which a dedication of the streets to public use is held to arise. *White* v. *Flannigain,* 1 Md. 540; *Moale* v. *Baltimore,* 5 Md. 321; *Hawley's case,* 33 Md. 280; *McCormick's case,* 45 Md. 523; *Tinges' case,* 51 Md. 600; *Pitts' case,* 73 Md. 326; *Baltimore* v. *Frick,* 82 Md. 83. But the dedication of such streets to public use resulting from their conveyance in the manner mentioned does not become final and irrevocable until there has been an acceptance of it on the part of the public authorities."

In *Broumel's case, supra,* it is said: "It is perfectly well settled in this State that a mere dedication is not, of itself, sufficient to establish a highway which the local authorities are bound to deal with as a thoroughfare. The owner of land cannot by merely making a plat of it and designating streets thereon, force the public authorities to assume control over it as a highway. If he could do so he might subject the county or the city to intolerable burdens and compel the construction and maintenance of expensive roads which the public convenience did not require. In addition to a dedication there must be an acceptance by competent authority, and such an acceptance may ordinarily be evidenced in one of three ways, viz: by deed or other record; by acts in *pais,* such as opening, grading or keeping the road in repair at the public expense; or by long continued user on the part of the public. * * * It is perfectly true as decided in *Frick's case,* 82 Md. 83, that a dedication may be complete without acceptance, and that in the absence of any condition there need be no user within a particular period; but however complete the *dedication* may be as against the party making it, the

road or street so dedicated does not become a public thoroughfare over which the public authorities may exert ownership or control, or which they can be compelled to keep in repair until they have seen fit to accept it. Nor will mere lapse of time, without more, be sufficient evidence of abandonment. A street once dedicated may be abandoned or it may never be accepted."

Seventeen years after Mrs. Sanderson acquired title to the land the city accepted the streets, and, so far as Mrs. Sanderson is concerned, there are no facts or circumstances in the case to prevent the acceptance. The city was not obliged to accept in a limited time. *McCormick's case* and *Broumel's case, supra.* It is true, as stated in *Baldwin* v. *Trimble,* 85 Md. 396, and in *Whittington* v. *Crisfield,* 121 Md. 387, that facts and circumstances may exist in a particular case sufficient to work an equitable estoppel against a municipality, but none such are found in this case.

At the conclusion of the whole case the Court instructed the jury that no legally sufficient evidence had been offered to entitle the plaintiff to recover under the first count of the declaration, and directed the jury to find for the defendant under that count. The granting of this prayer raises the most important question in the case. The Court evidently took the view that there was no taking of the plaintiff's property, and that under the familiar doctrine declared in a long line of decisions in this State "that as against a municipal corporation in the careful exercise of its right and power to grade and improve public streets or roads, and where there is no taking or actual physical invasion of property, there can be no cause of action for an unavoidable injury done" (*De Lauder* v. *Baltimore County,* 94 Md. 1), it denied a recovery under the first count of the declaration. It is declared by Section 40, Article 3 of the Constitution that: "The General Assembly shall enact no law authorizing private property to be taken for public use, without just compensation as agreed upon between the parties, or awarded by a

jury, being first paid or tendered to the party entitled to such compensation." This section of the Constitution quoted does not define property, nor does it declare what shall be a taking. It leaves those questions to the determination of the courts upon the facts of each particular case. *Garrett* v. *Lake Roland R. R. Co.,* 79 Md. 277; *Baltimore* v. *Bregenzer,* 125 Md. 78.

We have stated above the nature and extent of the injury caused to the plaintiff's property. It has resulted in the practical destruction of access to her property, and we are of opinion that, under the principles declared in *De Lauder's case, supra,* and in *Walters* v. *B. & O. R. R.,* 120 Md. 644, the injury amounts to or is equivalent to the taking of private property without making just compensation therefor to the owner. It follows from the views expressed that it was error to have granted the defendant's 1½ and second pray-ers. There was no error in refusing the plaintiff's first, one and a half, second, third, fourth, sixth and seventh prayers. We do not understand why, upon the theory upon which the case was tried, the plaintiff's fifth prayer was refused or the defendant's third prayer was granted, but we would not re-gard the rulings upon those prayers as reversible error as the right of recovery predicated upon the facts stated in the plaintiff's fifth prayer was preserved in the defendant's one and a half prayer. We do not find it necessary to.discuss the prayers, but the *Reporter* will set them out in the report of the case. An examination of them in the light of the views we have taken of the case will show the grounds upon which we have disposed of them.

*Judgment reversed with costs, and new trial awarded.*