## LANGLEY SHOPPING CENTER, INC., ET AL. *v.* STATE ROADS COMMISSION OF MARYLAND

[No. 149, October Term, 1956.]

*Decided May 7, 1957.*

The cause was argued before BRUNE, C. J., and COLLINS, HENDERSON, HAMMOND and PRESCOTT, JJ.

*Cary M. Euwer,* with whom were *Duckett, Gill & Orem* and *T. Howard Duckett* and *Nicholas Orem, Jr.,* on the brief, for appellants.

*Joseph D. Buscher, Special Assistant Attorney General,* and *T. Thornton Murray, Special Attorney for State Roads Commission,* with whom was *C. Ferdinand Sybert, Attorney General,* on the brief, for appellee.

BRUNE, C. J., delivered the opinion of the Court.

This is an appeal from an order of the Circuit Court for Prince George's County (Charles Marbury, Judge), sustaining appellee's demurrer to appellants' bill of complaint. The appellants, Langley Shopping Center, Inc. ("Langley") and G. Albert Gude and Joseph P. Abrahams, are owners of two large shopping centers diagonally across from each other at the intersection of the four-lane highways of New Hampshire Avenue and University Lane, in a section called "Langley Park" in Prince George's County, Maryland. The appellee, the State Roads Commission of Maryland (the "Commission"), is reconstructing New Hampshire Avenue into a divided four-lane dual highway in front of both of the properties of the appellants. It is about to construct in the center of this highway what is called a "median strip", made of concrete, which divides the northbound and southbound lanes in such a manner that traffic in the southbound lanes cannot cross the northbound lanes, and vice-versa, except at openings in the median strip divider. The openings in the median strip will be beyond the appellants' properties and thus left turns cannot be made directly into the appellants' shopping centers. There is a traffic light at the intersection of New Hampshire Avenue and University Lane where left turns are permitted. The bill also alleges that the Commission proposes to reconstruct University Lane as a four-lane highway and to install median strips therein in much the same manner as in New Hampshire Avenue. Appellants claim that the median strips will cause them to lose approximately one-half of their business from motorists who are said to constitute 95% of the plaintiffs' customers.

The first question is whether or not the Commission has the right to construct a median strip in such a manner as to deprive the plaintiffs of direct access to and particularly from the far sides of the roads bordering on their respective shopping centers without the Commission having to pay compensation for the taking. The second question is whether or not the Commission has properly exercised its power.

The plaintiffs do not deny the authority of the Commission to construct median dividers in the proper exercise of

its discretion and of its general powers to construct highways. See Code (1951), Article 89B, Section 7. (See also Sections 32 and 165 of the same Article as to limiting access to certain highways.) However, the plaintiffs complain that the median strip will prevent direct access to the far sides of the roads bordering on their properties, and that this amounts to a substantial denial of their rights of ingress and egress and to a taking of their property without compensation. Automobiles traveling on the far sides of the highways will still be able to reach the plaintiffs' properties, but will be required either to turn at the traffic signal above mentioned or to make a "U" turn at one of the cuts in the median strip or beyond the end of such a strip. The plaintiffs assert that the median strips will cause them loss because of the inconvenience caused by the fact that traffic must either turn at a traffic control or take a more circuitous route to reach their shopping centers.

Appellants place great stress on cases such as *DeLauder v. Baltimore County,* 94 Md. 1, 50 A. 427; *Walters v. B. & O. Railroad,* 120 Md. 644, 88 A. 47; *Sanderson v. Baltimore,* 135 Md. 509, 109 A. 425. In the *DeLauder Case* a culvert, embankment and guard rail cut off access; in the *Walters Case* a structure prevented practically all ingress and egress; in the *Sanderson Case* a change of grade of the street left the property inaccessible. These cited cases involve interferences with access which go much further than does the construction of the median strip which clearly does not deprive the appellants or their customers of all or substantially all ingress or egress to and from the appellants' properties.

The appellants' situation is more nearly analogous to that of the appellants in the case of *Krebs v. State Roads Comm.,* 160 Md. 584, 154 A. 131. In that case the State Roads Commission eliminated a highway grade crossing over a railroad and relocated it so that the road distance from the appellants' store to a nearby village was greatly increased. There the appellants alleged that eighty per cent of the trade of their store came from the village on the other side of the grade crossing and that much of the trade came to their store because of its proximity to the village; that the removal of

the old grade crossing and the corresponding interruption of the highway at that point would cause great inconvenience and would result in a loss of the property's usefulness, value and business worth, and that this action amounted to a taking of property in a constitutional sense without compensation. This Court said at 160 Md. 590-594: "It is complained that a deprivation of access in some degree will follow here upon interruption of the short communication with the territory east of the tracks, and that, considering the location of the particular property, and the degree of inconvenience to it, and to the conduct of business in it, this interference with access should be classed with the interference involved in cases of cutting off access to streets in front, as a taking of the nearby property in a constitutional sense. * * *[I]t seems difficult to draw any distinction in principle between the resulting disadvantage to property so situated and that to properties which suffer from the cutting off of access on one of two fronts, or from *the reduction of wide adjacent streets to narrow passages, none of which latter disadvantages have been found to constitute takings of the properties for public use in the constitutional sense.* *Baltimore v. Dobler,* 140 Md. 634, 118 A. 168; *Baltimore v. Marine Works,* 152 Md. 367, 136 A. 829; *Balto. & O. R. Co. v. Kahl,* 124 Md. 299, 92 A. 770; *O'Brien v. Baltimore Belt R. Co.,* 74 Md. 363, 22 A. 141; *Poole v. Falls Road Ry. Co.,* 88 Md. 533, 41 A. 1069. * * * It is argued that the complainants have, by reason of their situation, an easement in the crossing which is so near to them, at the old site, and that, as an easement is property, and the removal deprives them of that, it must be regarded as in law a taking of their property. * * * *It could not be said that the property of any of these users—at least property not actually deprived of all access—is to be taken,* unless it can be said that the location of the public easement at that site gave them superimposed property rights against the public as a whole. And this, we think, it did not do. Correct though it may be to say that the surrender or vacation of the public easement there will diminish values in the neighboring abutting properties, or damage businesses carried on in them, this, it seems, cannot

mean that the owners will lose any right other than, or in addition to, the right to travel across the tracks, which has been included and secured to them in the public easement. Their right has been only that secured to the public as a whole, even though by reason of the location of their properties it is of greater usefulness to them than to others of the public. The question under the Constitution is not one of comparative usefulness, or loss, to one property or the other from the shifting of the crossing, but one of taking private properties in doing it. And in the opinion of this court *the mere surrender of the easement of crossing at the former site, whatever may be the inconvenience or loss resulting to owners of the nearby properties, cannot be regarded as involving a taking of those properties. Balto. & O. R. Co. v. Gilmor,* 125 Md. 610, 618, 94 A. 200." (Emphasis supplied.)

Although this is the first case in this Court to present the question as to whether or not the installation of a median divider in a highway constitutes a taking of the property of an abutting landowner for which compensation must be paid, this question, or others very similar to it, have arisen elsewhere, notably in California.

In *People v. Sayig,* 101 Cal. App. 2d 890, 226 P. 2d 702, a divided highway was established in front of the defendants' properties with the result that their lots thereafter had direct access to only a one-way highway and could be reached by traffic moving in the opposite direction on the other side of the highway only by going to a cross-over at a distance of 500 to 1000 feet. It was held that the landowners were not entitled to compensation in condemnation proceedings on account of this change in access to their lots.

In *Rose v. State of California,* 19 Cal. 2d 713, 123 P. 2d 505, the Supreme Court of California drew a sharp distinction between damages for a taking of property for highway purposes due to a substantial impairment of an abutting landowner's right of access caused by the building of an underpass in the middle of a street in order to go below a railroad, and damages claimed because of a diversion of traffic. As to the latter, the court said (19 Cal. 2d at 737) : "The diversion of traffic is not a proper element to be considered in comput-

ing those damages inasmuch as a landowner has no property right in the continuation or maintenance of the flow of traffic past his property." In *People v. Ricciardi*, 23 Cal. 2d 390, 144 P. 2d 799, the *Rose Case* was cited with approval, though a vigorous dissent by Justice Edmonds in which one of his colleagues concurred, asserted that the result of the *Ricciardi Case* was difficult to reconcile with some of the rules therein cited with approval by the majority. See also *Holman v. State of California*, 97 Cal. App. 2d 237, 217 P. 2d 448, another divided highway case. In it the owners of a truck servicing station located on what became the northbound lane were cut off from easy access to traffic moving in the southbound lane. They were held not entitled to compensation.

In *City of Chicago v. Spoor*, 190 Ill. 340, 60 N. E. 540, a case very similar on its facts to the *Rose Case*, it was held that damages due to a diversion of traffic were not compensable.

The facts alleged in the present bill are more nearly akin, we think, to a diversion of traffic than to a blocking of the plaintiffs' means of access to the highways. It seems to us entirely reasonable that if the State could divert traffic entirely away from the plaintiffs' corners without being liable for damages for doing so, it may, in the interest of safety, and without incurring liability for damages, interpose an obstacle which may render access to the plaintiffs' properties less easy but which does not actually or virtually destroy the plaintiffs' access to the highway. An opposite view would require the State to pay through the nose for the privilege of further improving and adding to the safety of highways which it has built and which have evidently brought customers to the doors of the owners of land fronting on such highways.

The plaintiffs insist that the Commission should follow the same guides which are prescribed by statute in the case of limited access highways. Code (1951), Article 89B, Section 32. The portion of that Section which the plaintiffs emphasize is the proviso to the effect that the Commission shall not deny any abutting property owner all access to the highway. The short answer to this contention is that the plaintiffs are not to be denied all access to the highways here involved.

On this phase of the case we conclude on the basis of our

own decisions and authorities in other States that the construction of the median dividers does not constitute a taking of the plaintiffs' property within the constitutional meaning of the term and hence that the Commission is not bound to pay damages to the abutting landowners.

We turn now to the plaintiffs' contentions that the Commission acted in an arbitrary and capricious manner. We are told in one breath (by paragraph 12 of the amended bill) that "the construction of said median strips on either road is not in any sense essential to the safe and convenient use of said roads," that "the construction of said median strip * * * is conducive to unnecessary speeds and a false sense of security;" and that the Commission "has acted arbitrarily and capriciously in proposing and in constructing said median strip in this location." Yet the same paragraph also informs us that on week-days (except perhaps on Saturdays) "the traffic in every direction on both of said roads during the morning and afternoon hours of going to and from business is bumper to bumper extending many times beyond the whole frontage of plaintiffs' properties." Why attempts to cut across such traffic in entering or leaving the plaintiffs' premises would not constitute a menace to safety is something which the plaintiffs make no effort to explain. The dangers implicit in such maneuvers are rather too obvious to require a traffic expert to point them out.

Nor are these the only allegations of the bill showing the hazards at and near the intersection where the plaintiffs' shopping centers are located. Paragraph 8 informs us that "the use of both of said roads is so great that it is dangerous and hazardous and the source of great delay to undertake to turn at said traffic light [at the intersection] in order to eventually effect ingress to plaintiffs' properties by other and circuitous routes * * *." Paragraph 9 adds that the intersection is "one of the busiest spots in either Prince George's or Montgomery Counties, and compares not unfavorably in the matter of traffic to any of the main street intersections in the commercial part of any large city." Paragraph 10 gives the further information that a new store was about to open at the time of the filing of the bill on the northeast corner of the

intersection and that numerous other stores, some of which were in course of erection, would be built on the property at the northeast corner. No explanation is offered—and we do not know how any could be—as to why left-hand turns at this congested corner are hazardous and left-hand turns across heavy traffic within a few hundred feet of it would not be.

The appellants complain of not being allowed to offer proof of their case because of the sustaining of the demurrer. The demurrer, of course, admits all facts well pleaded in the bill. We think that the facts pleaded—as distinguished from the conclusion of arbitrary and capricious action on the part of the Commission which the plaintiffs allege—are in and of themselves sufficient to show the need of action by the Commission to improve the flow and to protect the safety of traffic moving along these two roads. It seems too clear to admit of debate that the means towards these ends adopted by the Commission are at least in the realm where a court would not be warranted in overturning the judgment of the Commission. See *Krebs v. State Roads Comm., supra; Murphy v. State Roads Commission,* 159 Md. 7, 149 A. 566; *Masson v. Reindollar,* 193 Md. 683, 69 A. 2d 482; *State Roads Commission v. Franklin,* 201 Md. 549, 95 A. 2d 99.

In a situation similar to the facts of the present case the Supreme Court of Appeals of West Virginia in *Brady v. Smith,* 139 W. Va. 259, 79 S. E. 2d 851, reversed a decree granting a preliminary injunction to restrain the construction of a median divider. There the plaintiff owned a motor vehicle repair garage, sales and service business, and the construction of a median divider in front of the property would, of course, make access to it from the far traffic lane less convenient and more circuitous. The court held that the exercise of the State Roads Commissioner's power to construct, reconstruct, repair and maintain the State Roads, might not be interfered with by the Courts except when the power had been exercised, in an arbitrary, capricious or fraudulent manner.

In our judgment, there is no taking of the plaintiffs' property in the constitutional sense and the facts alleged by the

plaintiffs do not support the conclusion of arbitrary action by the Commission which they assert. They are deprived of no legal right by the sustaining of the demurrer. A hearing to prove the facts which are alleged in their bill and which we find insufficient to support their contentions could not aid them.

*Decree affirmed, with costs.*